## Duff v. Duff, et al.

(Decided February 27, 1920.)

### Appeal from Perry Circuit Court.

1. Mines and Minerals—Leases, Royalties and Contracts.—By contract in writing A agreed to lease to B mineral lands, it being stipulated that B should prospect for thirty days, and, if he preferred, commence mining within that time, and continue to mine until the coal was exhausted, payment to be made at a prescribed rate per ton for coal mined. B having complied with the terms of the contract and commenced mining coal, and A's heirs having accepted royalties provided, held, that the contract nad been fully executed as an option and become operative as a lease, binding upon both parties, and is not a unilateral contract.

2. Landlord and Tenant—Contract for Lease of Land.—Where the vendor alone signs a contract for the lease of land, if otherwise sufficient, it will be enforcible against either party.

3. Contracts—Unilateral—Pleading.—Where defendant in answer to plaintiff's charge that the contract was unilateral, pleaded the contract, copying it into his answer, it was only necessary to plead the contract and facts showing that the option had been executed and become operative as a lease, since defendant need only meet the charges made against him.

NAPIER & COMBS for appellant.

EVERSOLE & TURNER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellees are the children and heirs of John A. Duff, who died intestate in August, 1918. Soon after his death they instituted this action against appellant to cancel a written contract alleged to have been executed by John A. Duff on February 10, 1917, under which appellant was claiming and exercising the right to mine coal from a described tract of land, and to enjoin him from entering upon the land for the purpose of mining coal therefrom or any other purpose.

The contract was alleged to be void (1) because obtained by fraud and undue influence; (2) because they owned the fee and John A. Duff owned only a life estate in the land, and (3) because the contract was unilateral.

By answer appellant admitted the execution of the contract and that he was mining coal from the land thereunder, but denied every allegation of the petition affecting the validity of the contract. In a separate paragraph he set out the contract in full and pleaded affirmatively that he had fully complied with its terms; that he had paid to and plaintiffs had accepted royalties as provided for in the contract for part of the coal that he had mined from the land; and that there was then due plaintiffs "the sum of $............... royalty, which amount he has tendered and offered to these plaintiffs," but which they had refused to accept.

To this affirmative defense the plaintiffs filed a general demurrer which the court sustained. The defendant having refused to plead further a judgment was entered canceling the contract and enjoining him from entering upon or removing coal, &c., from the land, from which judgment he has prosecuted this appeal.

The chancellor assigned as reasons for adjudging the contract to be void and cancelling it, (1) because it is unilateral in its terms, and (2) because it was not signed by the defendant. The contract is as follows:

"This agreement made and entered into by and between John A. Duff, of Chavies, Perry county, Kentucky, party of the first part, and Ira J. Duff of the same place, of the second part. Party of the first part agrees to lease to the said second party, a certain tract or boundary of mineral lying in the face of the hill opposite Chavies, Ky. Party of the second part agrees to pay a royalty to the first party of 8c per ton (2,000 lbs.) for all minable coal under three feet in thickness, and 10c

per ton (2,000 lbs.) for all minable coal three feet and over. Party of the first part agrees to give free of charge sufficient timber under 12 inches in diameter for all mining purposes only. Party of the second part agrees to prospect and see what he can find inside of 30 days, and if he prefers, commence mining at any time inside the 30 days, and so continue until all the coal is gone out.

"Second party is to have the privilege of building all houses and pens necessary for mining purposes.

"Party of the second part is to have free dumping ground for all slate and waste from the mine.

"Party of the second part is to pay to the party of the first part 2c per ton for all coal mined through his possession. Party of the first part reserves the space from the end of the bridge up the river 100 feet. Party of the first part is to settle for the royalty by the railroad freight weights.

"Signed this 10th day of February, 1917.

"JOHN A. DUFF."

In support of the contention that the contract is unilateral we are cited by counsel for plaintiffs to Berry v. Frisbie, et al., 120 Ky. 337, 86 S. W. 558, and Killebrew v. Marbury, 151 Ky. 345, 151 S. W. 662. But those cases and many more like them in which options for the purchase or lease of land somewhat similar in terms to this contract were held to be void for lack of mutuality, are clearly inapplicable here since in none of those cases had there been a compliance by the optionee or lessee with the terms of the contract.

As stands admitted by the petition, the defendant had entered upon the land and was engaged in mining coal therefrom under and in accordance with the terms of the contract when the suit was filed. And in addition it must be taken as true upon demurrer to his affirmative defense that plaintiffs, by the acceptance for a time at least of royalties provided therein, had recognized the contract as a lease and acquiesced in the manner in which defendant had accepted and complied with any option he had a right to exercise before the writing would become operative as a lease. Insofar then as the contract can be considered as conferring upon defendant an option to lease or not to lease, it had been fully executed long before this action was instituted and plaintiffs cannot now

complain, even were it true, that as to the option given defendant to lease or not to lease the contract was unilateral and could not have been enforced against him. Lowe v. Ayer-Lord Tie Co., 29 R. 1302, 97 S. W. 383; Hoffman v. Colgan, 25 R. 98, 74 S. W. 724; Allen v. New Domain Oil & Gas Co., 24 R. 2169, 73 S. W. 747; Murphy-Thompson Co. v. Reid, 125 Ky. 585, 101 S. W. 964.

The contract, after it became effective as a lease, certainly confers upon the defendant no option to mine or not to mine the coal from the land. Upon the other hand it obligates him not only during the option period "to prospect and see what he can find inside of 30 days, and if he prefers, commence mining at any time inside the 30 days," but also binds him, when he does exercise his option and commence mining, whether within the thirty days or not, to "so continue until all the coal is gone out," and to pay the stipulated royalties.

We are therefore clearly of the opinion that the contract had been fully executed as an option and become operative as a lease binding upon both parties when this action was instituted; and was not then, if ever, a unilateral contract.

2. Nor does the fact that the contract was not signed by defendant render it void, as held by the chancellor.

The contract was required to be in writing and signed, if at all, under section 470, Kentucky Statutes, which among other things provides that no action shall be brought to charge any person "upon any contract for the sale of real estate or any lease thereof for longer term than one year" unless the contract be in writing and signed by the party to be charged therewith. In a long line of cases, many of which will be found cited in note 23 to subsection 6 of section 470 of the statutes, this court has uniformly held that where the vendor alone signs the writing, if otherwise sufficient, it will be enforcible by either party after delivery and acceptance. It is "the party to be charged," the one who agrees to sell or lease his land, that must sign the writing. John A. Duff was "the party to be charged" by this contract; it had been delivered and accepted by defendant and it is not void because of defendant's failure to sign it.

3. Counsel for plaintiffs also seek to uphold the chancellor's ruling in sustaining the demurrer to the sec-

ond paragraph of defendant's answer upon the ground that it does not plead facts showing he had fully complied with its terms. Defendant by this paragraph of his answer was only setting out in full his contract as an affirmative defense against the allegations of the petition that it was unilateral. Plaintiffs had not copied into or filed with their petition the contract, doubtless because it was in defendant's possession. For which reason too, he no doubt decided to plead the contract in answer to their charge it was unilateral instead of raising a question as to the sufficiency of the petition as to that charge. For that purpose he had only to plead the contract and facts showing that the option had been executed and it had become operative as a lease. This he did fully. He did not have to anticipate that plaintiffs might seek its cancellation because of a breach by him other than as alleged in the petition, and which he denied in the first paragraph of his answer. Plaintiffs are seeking the cancellation of the contract. They must plead all the facts upon which they expect to rely for the relief sought. The defendant, who does not seek affirmative relief of any kind, need only meet the charges made against him.

It results therefore that the court erred in sustaining the demurrer to the second paragraph of defendant's answer and in entering judgment against him.

Wherefore the judgment is reversed and the cause remanded for such further proceedings as may be necessary.