## Strong et al. v. Duff.

(Decided March 22, 1929.)

616

MORGAN & EVERSOLE for appellants.

W. A. STANFILL and FAULKNER & FAULKNER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On February 10, 1917, John A. Duff executed to the appellee and plaintiff below, Ira J. Duff, a contract whereby he leased to plaintiff the right to take coal from a small tract of land containing not exceeding 6 acres, and the right to carry coal, to which plaintiff might have the right to mine from adjoining land, through the entries on the leased tract in consideratoin of the payment by lessee to the lessor of 2 cents per ton for all coal so transported through such entry from such adjoining lands. Shortly after the execution of that lease, John A. Duff died intestate, and left surviving him as his only heirs at law the appellants and defendants below, Dora Duff Strong (she having since married), Laura Whitaker, and Charlie Duff. On August 20, 1918, they, as such surviving heirs brought an action in the Perry circuit court against plaintiff, Ira J. Duff, in which they alleged that their father, at the time he executed the lease, was of unsound mind, and that he was unduly influenced by the lessee therein (plaintiff, Ira J. Duff) to make it, and they prayed for its cancellation. They also, under the allegations made in their petition, sought and obtained a temporary restraining order enjoining defendant therein, and plaintiff here, from exercising any of his alleged rights under the lease contract sought to be canceled, and from going upon the leased tract for any purpose whatsoever.

The clerk, on the face of those allegations, issued such temporary restraining order, but before doing so plaintiffs therein and defendants herein executed bond with certain sureties, which, omitting caption, date, and signatures, was in these words: ''We undertake to the defendant that the plaintiff, Dora Duff, Laura Whitaker and Charley Duff, shall satisfy so much of the judgment in the Perry Circuit Court, in favor of Ira J. Duff, against Dora Duff, Laura Whitaker and Charley Duff, as is enjoined in this action, to the extent that the injunction may be dissolved, and also that they will satisfy any modified judgment that may be rendered in lieu of

the judgment enjoined, or so much of it as exceeds the amount left unenjoined, and not exceeding the original judgment; and also such costs and damages not to exceed $1,000 as may be awarded to the defendant in consequence of the injunction.''

That action was litigated, and it was not finally determined until 6½ years from the date it was filed. It found its way to this court twice, and our opinions therein are reported in 187 Ky. 237, 218 S. W. 1008, and 205 Ky. 10, 265 S. W. 305. Pursuant to the mandate following the last opinion, the action was finally dismissed, which was an adjudication that it was without merit and the restraining order issued therein at the time it was filed was wrongfully obtained.

After that, this action was filed in the same court by plaintiff against the principals and sureties in the bond, supra, to recover damages for the wrongful obtention of the restraining order, which plaintiff fixed in his petition at the sum of $32,701.85. The answer put in issue all of the material averments of the petition, and, upon trial before a jury, there was a verdict in favor of plaintiff for the sum of $1,500 upon which judgment was rendered, and which the court declined to set aside on a motion made for that purpose, and to reverse it defendants prosecute this appeal. Before the trial, plaintiff dismissed his action, or withdrew it, as to the sureties on the bond, and prosecuted it to final termination against only the principals therein. Numerous grounds are argued and relied on for a reversal of the judgment, but we have concluded that only those discussed and determined below are of sufficient materiality to merit consideration.

It is first argued that the bond is so defective as to not support this action based upon it, but with which we are not inclined to agree. Section 278 of the Civil Code of Practice prescribes for the execution of a bond by plaintiff before obtaining any character of injunctive process. That section is divided into four subsections, and they deal with different conditions in the bond, dependent upon the character of action sought to be enjoined, and in subsection 3 it is specified that, ''in all other cases, the court, judge or officer granting the injunction shall, in the order granting it, fix the amount of the bond to be given, and may prescribe its terms. If the terms of the bond be not so prescribed, it shall be to the effect that the party giving it will pay to the party en-

joined such damages as he may sustain, if it be finally decided that the injunction ought not to have been granted.'' Evidently the character of bond that was required, and the one that should have been executed in this case, was one under the terms of that subsection, but it will be perceived that the clerk in drafting it inserted some of the terms specified in other subsections of section 278, relating to the enjoining of the collection of a judgment, when in truth and in fact the defendant in that case (Ira J. Duff, who is the plaintiff here) had obtained no judgment against any of the plaintiffs therein, and all of such erroneous insertions by the clerk in the bond as refers to the enjoining of a judgment had no place in the case, since there were no facts to which they could relate. If, therefore, there were no other obligatory terms in the bond, it might be construed as ineffectual for any purpose, unless it could be treated as a common-law bond, but concerning which we express no opinion.

It will, however, be observed that the bond, as executed, secures and provides for the payment of ''damages not to exceed $1,000.00 as may be awarded to the defendant in consequence of the injunction.'' The text in 32 C. J. 314, sec. 515, lays down the rule that a substantial compliance with the statutory prescribed condition for an injunction bond is all that is required; it not being essential that the prescribed conditions should be literally followed, and among the many cases cited in support of the text is the one of Alexander v. Gish, 88 Ky. 13, 9 S. W. 801, 10 Ky. Law Rep. 989, and which we have examined and find that it supports the text. As a consequence of that rule, the text on page 318, sec. 525 of the same volume of C. J., states the further and additional one that ''the insertion in an injunction bond of conditions not required by law, but not against law, will not vitiate those that are required by law, and the conditions not required will, it seems, be regarded merely as surplusage.'' In support of that text there is cited in the notes the cases of Hopkins' Adm'r v. Morgan, 7 T. B. Mon. 1; Johnson v. Vaughan, 9 B. Mon. 217, and Greathouse v. Hord, 1 Dana 105, and the opinions of those cases, especially the Johnson case, fully support the statement of the text.

It is also held in the case of Cobb v. Curts, 4 Litt. 235, that an injunction bond irregularly taken by the

officer whose duty it was to do so might not be sufficient to uphold the injunction, if a motion had been made to dissolve it on that ground, but, in the absence of such a motion, the injunction was not invalid, nor would the irregularity relieve the obligors in the bond for the damages sustained if its conditions were such as that an action could be maintained upon it. In the text referred to, cases from other courts are cited sustaining the same principles and propositions. We have been unable to find any case militating against that rule which is also adopted and applied in the cited domestic cases; but were it a question of first impression we would be inclined to adopt it now. It is not only in conformity with the principles of fairness and justice, but it does not impose liability where none existed. Its only effect is to discard the unnecessary and surplus conditions and base liability exclusively upon the proper and required conditions, though only substantially set forth. It is therefore our conclusion that this action is maintainable, and the bond may be construed as executed under subsection 3 of section 278 of the Civil Code, supra, because of the stipulation contained in the bond to pay "such costs and damages not to exceed $1,000 as may be awarded to the defendant in consequence of the injunction." That language necessarily means and was intended to mean to obligate the bondsman to account to the defendant in that suit for all of his costs and damages that he might sustain by virtue of the wrongful obtention of the injunction and as a consequence thereof.

2. It is next argued that neither Mrs. Whitaker nor Charley Duff is liable on the bond, though valid, as we have above held, because the former was a married woman at the time she signed it, and the latter was an infant lacking only a short time of being 21 years of age. Our present Married Woman's Act (Acts 1894, c. 76) gives her the right to sue and be sued concerning her own property. Necessarily, she would have the right to execute all papers and documents required to obtain full relief by any court procedure to which she might be entitled for the protection of her property rights. We therefore conclude that this argument is not sufficient to excuse Mrs. Whitaker from liability on the bond. The brother, Charley Duff, though of minority age at the time the bond was executed, became a legal adult shortly thereafter, and following then he gave his deposition in the

case and actively participated in the litigation throughout its continuance, which, we conclude, had the effect to ratify his signature on the bond, as well as all other preceding steps taken in the litigation. We therefore conclude that neither argument embodied in this ground possesses merit.

3. It is next insisted that the court erred in admitting evidence of, and in submitting to the jury by its instructions, the alleged damages plaintiff sustained because of his inability to transport coal from adjoining lands to the leased tract through the entry in it, since the injunction expressly restrained him from doing so, and all because plaintiff failed to prove that he had any legal and durable right to any coal on any such adjoining land, and which, under the proofs in the record, we think correct. Plaintiff alleged in his petition, in order to lay the foundation for damages for being deprived of the use of the entry across or through the leased land, that he owned and possessed the coal under an adjoining tract, and which he was deprived of mining during the existence of the injunction, and by virtue of which he was damaged as set out in his petition. The answer denied that averment, and plaintiff failed to sustain it by his proof. He testified that the adjoining tract, from which he alleged in his petition that he had the right to take the coal, was owned by his wife, to whom it was conveyed, and the only mining privilege to which he testified was merely a temporary permissive one which could be revoked at any time. If he had testified, and it was not disproven, that his wife had given him permission for such a time as such a right may be created by parol, then possibly he could recover the proper damages for being deprived of mining whatever coal he could extract within that time; or, of course, if he had proven an acquired right obtained through the execution of a proper writing for a longer term, then he would be entitled to recover his proper damage to the full extent of the period covered by the continuance of the injunction if his mining privilege extended the full length of that period. However, as we have seen, under his proof he possessed no enforceable right to take the coal from the adjoining tract of his wife, and for that reason none of the evidence relating to damage because of such deprivation was competent, and the instruction submitting that item of damage was for the same reason erroneous.

4. Plaintiff alleged as separate items of damage that he was compelled to pay an attorney's fee of $500 in the injunction case against him, and stenographer's fees for the taking of evidence at its two trials. Since the injunction was not the sole relief sought in that case, whatever attorney's fees and costs that plaintiff sustained, exclusively connected with and attributable to defeating the injunction, would be recoverable in this action on the injunction bonds. See Wilder v. Miller, 182 Ky. 210, 206 S. W. 293; U. S. Fidelity & Guaranty Co. v. Travelers' Insurance Machine Co., 188 Ky. 841, 224 S. W. 496; Burley Tobacco Growers' Co-operative Association v. Pennebaker Home for Girls, 221 Ky. 718, 299 S. W. 734; Avondale Heights Co. v. Proctor, 224 Ky. 188, 5 S. W. (2d) 1054, and other cases cited in those opinions. There was absolutely no testimony in this case on behalf of plaintiff as to the amount, if any, of the incurred attorney's fees and other costs that exclusively grew out of and resulted from any relief against the granting of the injunction or restraining order issued by the clerk. His entire expense, so far as this record shows, and as disclosed by the two appeals to this court, was incurred in defending the merits of the original action which, as we have seen, sought to annul the lease contract between him and John A. Duff. If any of such expenses were due to or incurred in an effort to defeat the injunction, then plaintiff would be entitled to recover such part thereof, but, having shown none in his testimony, the court erred in submitting those items of damage to the jury.

5. Lastly, it is insisted that in no event may a recovery be had beyond the amount of $1,000, the penal sum named in the bond. The remedy of injunction was originally granted at common law without the requirement of the execution of a bond by plaintiff. Later, chancery courts, who had the authority to grant the relief, evolved and put into execution a rule of court whereby the applicant for an injunction might be required to execute bond within the discretion of the court applied to; and later the practice became a matter of statutory cognizance, and the respective states of the Union now have statutory regulations concerning it. Our statute is section 278, supra, of our Civil Code of Practice, and we have seen that its subsection 3 in a case like this provides for the execution of a bond in a fixed and limited amount, or, if not fixed, then obligation in general terms to pay de-

fendant such damages as he may sustain if it is finally determined that the injunction ought not to have been granted. Under a bond containing such general obligation, the authorities are unanimous that any legitimate item of damage is recoverable in a suit on the bond against its obligors without limit; but, if the bond contains a fixed sum measuring the extent of the assumed liability, a different question is presented and which the cases and text-writers say has the effect to limit the amount of recovery in a suit thereon to the fixed sum in the bond.

The text in Joyce on Injunctions, vol 1, sec. 191c, on the exact point, says: "In an action on an injunction bond there cannot be a recovery of a greater sum than the penalty of the bond. So when a bond is required and given the court of chancery cannot award greater damages than the penalty stated therein." To the first sentence of that excerpt many cases from different courts are cited, including the one of Hughes' Adm'r v. Wickliffe, 11 B. Mon. 202, and which completely supports the text; likewise do the later cases of Campbell v. Brainard (a superior court opinion) 4 Ky. Law Rep: 735, and the later one from this court of Wilder v. Miller, 182 Ky. 210, 206 S. W. 293. To the same effect is the text of 32 C. J. 466, sec. 809, which states the rule in practically the same terms as does Mr. Joyce, but it furthermore adds that the right is subject to statutory regulation which might prescribe a different rule. It is conceded by counsel for defendants that the limitation in the bond, if any, measures the extent of the recovery against the sureties thereon; but the cases and authorities supra, and many others that could be cited seem to make no distinction between principals and sureties in that regard.

The text of 14 R. C. L. 476, sec. 177, in stating the rule, says: "It is against the well established rule of the chancery court to extend the liability of a surety, by any equitable construction, beyond the terms of his contract, and in a proceeding on the bond the liability on the principal cannot be extended beyond that of the surety." See, also, Bein v. Heath, 12 How. 168, 13 L. Ed. 939; Carter v. Mulrein, 82 Cal. 167, 22 P. 1086, 16 Am. St. Rep. 99, and annotations following. Many cases are to be found, both in this and other courts, wherein guardians, officers, contractors, and others are liable upon their bonds beyond the penal sum fixed therein, although recovery

against their sureties would be limited to such fixed amounts; but such rulings are based upon entirely different considerations and proceed upon an entirely different legal theory. In each of them the principals would be liable under the law upon the same character of action without the giving or execution of a bond; while in an injunction proceeding the only liability of the principal, independent of one on the bond, is that incurred by maliciously procuring the injunction without probable cause, and which may be prosecuted against the principal, although a bond was given with a fixed amount. See Brandenberg v. Addison, 221 Ky. 442, 298 S. W. 1091, and annotations to the case of Tenth Ward Road District No. 11 v. Texas & Pacific Ry. Co. beginning on page 1517, 45 A. L. R., and the cases of Cox v. Taylor's Adm'r, 10 B. Mon. 17, and Lexington & Ohio R. Co. v. Applegate, 8 Dana, 289, 33 Am. Dec. 497. If, therefore, the damages exceed the amount fixed in the bond, and a recovery is sought for such excess, it must be through and by an action for malicious prosecution and not one on the bond, both of which rights under the Brandenberg case may be prosecuted in one action; the recovery, of course, for such excess damages over and above the penal sum in the bond to be obtained under the malicious prosecution branch of the action and only as against the principal in the bond. No allegations were made in the petition herein that would entitle plaintiff to recover as if for a malicious prosecution, and he is therefore confined to the amount fixed in the bond, which in this case, as we have seen, is $1,000, and under the present condition of the pleadings no recovery can be had for an amount exceeding that sum.

For the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent herewith.

Whole court sitting.