NASHVILLE UNION STOCKYARDS, INC., v. W. H. GRISSIM.

Middle Section. October 4, 1930.

Petition for Certiorari denied by Supreme Court, May 2, 1931.

116

W. S. Faulkner, of Lebanon, and Aust, Cornelius & Wade, of Nashville, for appellant, Grissim.

Seay, Stockell, Edwards & Keeble, of Nashville, for appellee, Stockyards.

CROWNOVER, J. This is now a suit by the defendant, Grissim, against the Stockyards corporation to recover damages for the wrongful suing out of an injunction. Damages in excess of the amount of the bond were sought on account of malice and want of probable cause in suing out the injunction. And a jury was demanded under section 6259 of Shannon's Code.

The complainant Stockyards Corporation filed a bill in the Chancery Court of Davidson County against W. H. Grissim, enjoining him from entering its stockyards and premises for the purpose of conducting his business as a commission merchant, or for any purpose other than as shipper or consignee of livestock to complainant's stockyard for sale, for reasons satisfactory to itself, but later complainant filed an amended bill in which it alleged that complainant was the absolute owner in fee of said stockyards and premises, from the use of which it derived its income, and that the defendant, Grissim, had done acts which were hurtful and injurious to complainant's business, and was using the privilege to enter its yards for the purpose of transacting his business and thereby obtained information which enabled him to go out and buy livestock which he shipped elsewhere and thus diverted business from complainant to others and prevented shipments of livestock to complainant's yards that would have come to its yards, which caused complainant great loss, injury and damage.

A preliminary injunction was issued in accordance with the prayer of the original bill, upon the execution of a $500 bond.

The defendant, Grissim, answered that he had properly demeaned himself; was an agent and employee of J. D. Bolling & Co., licensed commission merchants, who had rented offices from complainant within said premises; that he had no intention of injuring complainants, and had a right to buy and sell and ship elsewhere; that complainant had a monopoly as there were no other stockyards in Nashville, and it had notified defendant that he must ship all of his stock through its stockyards although out of the way and line of shipment, or he must not enter its stockyards; that defendant had refused to comply because complainant was a corporation operating under a Federal statute which forbade unjust discrimination and it was therefore onerated with public service duties, and had no right to enjoin him from entering its premises and interfere with his business.

The cause was heard by the Chancellor on the original bill, as amended, the answer of the defendant, and exhibits, on a motion of the defendant to dissolve the injunction. The Chancellor sustained the motion, dissolved the injunction and dismissed the bill.

Complainant appealed to the Supreme Court. That court held that the injunction should have been dissolved, and that the bill was properly dismissed. The Chancellor's decree was affirmed, and "the

cause remanded to the Chancery Court for a reference as to damages, if any, sustained by defendant as a result of suing out the injunction," and the opinion was reported in 153 Tenn., 225, 280 S. W., 1015.

The order of the Supreme Court was amended to strike out the word "reference," and the cause was "remanded to the Chancery Court of Davidson County to the end that the damages, if any, to the defendant, W. H. Grissim, Jr., be ascertained."

After remand to the Chancery Court, on the trial for damages, a jury having been demanded, the defendant tendered the following issues of fact to be submitted to the jury:

"(1) What compensatory damages, if any, has the defendant sustained on account of the wrongful suing out of the injunction?

"(2) What exemplary or vindictive damages, if any, should be adjudged in favor of the defendant in this cause because of the wrongful suing out of the injunction?"

But the court submitted issues to the jury, which, after hearing the evidence and the charge of the court, returned answers thereto as follows:

"1. Did the defendant suffer any damages by reason of the injunction sued out in this cause, because of the loss of salary and wages? A. Yes.

"2. Did the defendant suffer any damages by the suing out of the injunction in this cause, because of loss of profits and commissions? A. Yes.

3. Did the defendant suffer any other damages to his established business growing out of the suing out of the injunction in this cause? A. Yes.

"4. Was the writ of injunction sued out in this case with malice and without probable cause, and if so, is the defendant entitled to any punitive or exemplary damages therefor? A. Can't agree.

"5. What would be a reasonable compensation for the defendant for such injuries sustained by him, if any, not exceeding the amount of five hundred ($500) dollars? A. $500.

"6. Did W. H. Grissim, Jr., knowingly violate the injunction by the transaction of business at the stock yards property while the injunction was in effect? A. No.

"7. Pending the injunction, did or not the stock yards company, through its officers and agents, encourage the acts of Grissim done by him on said premises? A. Yes."

The defendant excepted to the ruling of the court in submitting the fifth issue to the jury, and prayed an appeal to the Supreme Court, which was denied, and defendant excepted.

Defendant Grissim moved the court for a mistrial in this cause because of the failure of the jury to agree upon issue number four,

which motion was overruled by the court, and a judgment for $500 was entered in favor of Grissim and against the complainant and its sureties on the injunction bond.

Motion for a new trial having been overruled, defendant Grissim has appealed to this court and assigned three errors, which are as follows:

"(1) The Court erred in charging the jury as follows:

"'As this court has no jurisdiction to try a suit for unliquidated damages to a person, property or character, except as above indicated, this right given the defendant to have his damages assessed in this cause must be confined to his right against the injunction bond, and hence the amount of the recovery must be limited to the amount of the bond, which is $500.'

"(2) The court erred in not granting a new trial because of the inability of the jury to agree upon its response to the fourth issue, it being a material issue.

"(3) The court erred in charging the jury as follows:

"'You may properly consider whether or not the complainant, in good faith, when it sought the advice of counsel before suing out the injunction in this cause, disclosed to counsel all material facts relating to the situation, and acted in pursuance of such advice, and this may be taken into consideration in your answer to issue number four, whether or not the writ of injunction was sued out in this cause with malice, and without probable cause.'"

The Nashville Union Stockyards, Inc., owned and operated livestock yards in the City of Nashville. Said stockyards were subject to the regulations of the Act of Congress known as the Packers & Stockyards Act of 1921, U. S. Code, Title 7, sec. 202.

The stockyards are used as a market place for cattle, sheep, hogs, and other livestock, and also furnish cattle-pens, lotage, feed, water and other facilities for loading cattle and livestock for shipment. The charges for these services constitute the compensation of the Stockyards Corporation, and from which it derives its principal income.

Practically all the stock shipped out from this territory has to pass through these stockyards, as there are no other loading stations in the City of Nashville.

A man engaged in the business of dealing or trading in cattle and other livestock, buying and selling, must necessarily have access to these yards.

The stockyards are of such size, dimensions and character as to bring the corporation within the provisions of the Federal Packers & Stockyards Act of 1921, which onerated it with certain public duties.

At the time the original bill was filed, and for some time prior thereto, the defendant, W. H. Grissim, was a commissionman or dealer in the employ of J. D. Bolling & Co., a market agency, as defined by said Act, and he also worked for himself. To carry on the business, J. D. Bolling & Co. and employees necessarily had to have access to said stockyards, cattle and stock pens, and other conveniences furnished by the complainant. Bolling & Co. had rented an office on the premises from the complainant, and the defendant, Grissim, as an employee had access to the office as well as to all other parts and portions of the stockyards.

Grissim had been engaged in the livestock business, as a buyer and seller, since reaching manhood, and had no experience in any other calling. His business was increasing and it had taken him years to build up a business and clientele.

Stock raisers desiring to sell in the open market at Nashville consigned their shipment to some market agency, such as Bolling & Co., in the stockyards of complainant, and this agency then offered the livestock in the open market on complainant's stockyards, and for such service received from the shipper a commission known as "incoming commission," the amount being fixed by the tariff commission of such market agency filed with the Secretary of Agriculture at Washington.

Such market agencies also bought livestock on the open market at said stockyards for persons from whom they had orders, and such business was known as "order buying." For this service they charged the purchaser a commission, and this was known as "outgoing commission."

For his services to J. D. Bolling & Co. in handling and selling stock consigned to that company and for services in soliciting patronage of shippers for Bolling & Co., Grissim was paid a salary of $2520 per annum by Bolling & Co., in monthly installments of $210 each.

For his services in securing orders for order buying and in purchasing stock on the yards to fill such orders, Bolling & Co. paid him by equally dividing the outgoing commission earned on the orders secured and filled by Grissim. For the year preceding the suing out of the injunction in this case Grissim's one-half of the outgoing commissions, paid to him by Bolling & Co., amounted to $5361.15, which was in addition to his salary of $2520 paid him by Bolling & Co.

While the larger part of the purchases for order buying was made on the stockyards, Grissim, by reason of his connection with Bolling & Co., would learn of farmers and stock growers having livestock for sale at points like Lebanon, Watertown, Springfield, and other places around Nashville, and he would utilize that information by

going direct to the owners of the stock and purchasing same to fill orders, and thus earn outgoing commission. One-half of commissions or profits thus earned constituted a part of the total of $5361.15 earned by Grissim in commissions for one year next preceding the injunction.

Grissim also operated a farm, and in connection therewith he bought, fed and sold livestock, but his profits therefrom were not included in the above figures.

In the month of June, 1924, the Stockyards Corporation, through its manager, cited Grissim to appear before its board of directors. Their complaint was that Grissim was buying cattle at nearby towns and shipping them direct to northern or eastern destinations, without routing them by way of Nashville. In every instance complained of, if the shipment had come by way of Nashville it would have had to go out of its way, in some instances it would have had to be shipped back over the same road on which it came, thus increasing the freight and other expenses and causing delay, but if the shipments had come into Nashville the Stockyards Corporation would have charged for lotage, feed, loading and unloading, and for other necessary services. Grissim was informed by the directors that he must either route all of his shipments through the Nashville Stockyards or he would not be allowed to enter the stockyards.

Grissim refused to agree to route shipments out of their way through Nashville and thus increase costs and expenses.

Accordingly, the Stockyards Corporation, on July 3, 1924, filed the bill in this cause and enjoined Grissim from "entering on the premises of complainant for the purpose of conducting his business as a commission merchant, or for any other purpose whatsoever other than as a shipper or consignee of livestock."

The sole ground for the injunction, as stated in the original bill, was "for reasons satisfactory to itself."

The corporation later filed an amended bill, setting out additional reasons, as hereinabove stated, but the injunction was granted on the allegations of the original bill, and was issued and executed before the amended bill was filed.

Grissim was kept entirely out of the Stockyards for fifteen days, until the Chancellor dissolved the injunction. He then returned to the yards as trader but was not allowed to sell on commission until the injunction was dismissed by the Supreme Court seventeen months later.

This caused him to lose his job with Bolling & Co., which job he might have continued to hold indefinitely.

During the pendency of the injunction, for seventeen months, he carried on the business of a trader, but his business dealings were much restricted. He lost his position with Bolling & Co., which

resulted in the loss of his salary of $2520 per annum. He lost a great many customers and his business reputation was injured. For the next twelve months after the issuance of the injunction his profits for trading carried on by himself amounted to only $2784.50.

The Chancellor dissolved the injunction and dismissed the bill on July 18, 1924. Complainant appealed to the Supreme Court, which thus kept the injunction in force, and on December 7, 1925, the Supreme Court handed down its opinion affirming the Chancellor in all things and remanded the cause for the ascertainment of damages sustained by Grissim because of the suing out of the injunction.

As has been seen, there are only three assignments of errors, and they go to the propositions: (1) That the court erred in charging the jury that the Chancery Court had no jurisdiction of malicious prosecution suits involving unliquidated damages to person, property, or character, and that defendant Grissim's right of recovery must be confined to the injunction bond and limited to $500. (2) That the Court erred in not granting a new trial because of the inability of the jury to agree upon its response to the fourth issue as to whether the injunction was maliciously sued out without probable cause. (3) That the court erred in charging the jury with respect to the weight to be given to advice of counsel in determining whether the injunction was maliciously sued out without probable cause.

1. We are of the opinion that the court erred in charging the jury that the Chancery Court had no jurisdiction of a malicious prosecution suit for the wrongful suing out of an injunction, but, in view of our holding on the other assignments of errors, we hold that it was immaterial in this case.

The Chancery Court had jurisdiction to award damages for the wrongful suing out of an injunction whether it be upon the injunction bond or for maliciously suing out the injunction without probable cause, or for both.

As stated, this suit now involves the awarding of damages for the wrongful suing out of the injunction, the damages to be assessed by a jury, under section 6259 of Shannon's Code, which is as follows:

"The damages may be ascertained by the court in which the cause is heard, and injunction dissolved, upon reference to the Clerk and Master, and proof, or upon an issue of fact, to be made up and tried as in other cases of issues of fact, if the parties elect to have a jury."

A suit on the bond is ex contractu. DaFoe v. Starek, 9 Tenn. App., 668. An action for malicious prosecution, showing malice and want of probable cause, is an action ex delicto. 38 C. J., 386 and 457.

When the Chancery Court takes jurisdiction for one purpose, it takes jurisdiction for all purposes, which includes civil causes of action for injuries to person, property, or character, involving un-

liquidated damages. Gibson's Suits in Chancery, secs. 36 and 38; 1 Pomeroy's Equity Jurisprudence (3 Ed.), secs. 181, 231, 236 and 237; Ducktown Sulphur & Copper Co. v. Barnes, 60 S. W., 593, 607.

"A Court of Equity, having taken jurisdiction of the cause for the purpose of injunction, may decide the whole controversy, its jurisdiction to award damages being incidental to its jurisdiction of the main subject." Richi v. Chattanooga Brewing Co., 105 Tenn., 651, 58 S. W., 646.

"In such cases the court of equity, having obtained jurisdiction of the cause for the purpose of an injunction, may decide the whole controversy and render a final decree, even though all the issues are legal in their nature, capable of being tried by a court of law, and the legal remedies therefor are adequate." 1 Pomeroy's Equity Jurisprudence (3 Ed.), sec. 236. Provided that the relief is not inconsistent with the pleading. Ins. Co. v. Bellos, 158 Tenn., 554, 13 S. W. (2d), 795, 14 S. W. (2d), 961.

The Chancery Court has jurisdiction to award vindictive damages for the malicious prosecution of an injunction suit without probable cause. Pyott Land & Mining Co. v. Tarwater, 126 Tenn., 601, 150 S. W., 539; Hawkins v. Hubbell, 127 Tenn., 312, 154 S. W., 1146; Gordon v. Kentucky Midland Coal Co., 152 Tenn., 367, 278 S. W., 68; Phillips v. Landess, 152 Tenn., 682, 280 S. W., 694; South Penn Oil Co. v. Stone, 57 S. W., 374.

The prevailing view is that the requirement of an injunction bond is merely to provide an additional remedy for the wrongful suing out of the injunction, and does not in any way affect the right to bring an action of malicious prosecution for maliciously suing out the injunction without probable cause. 32 C. J., 435, sec. 744.

Under the statute, the party may have a reference to the Master or demand a jury, in the same case, for the assessment of damages for the wrongful suing out of the injunction, or he may bring an independent suit. In either event he may sue on the bond and for malicious prosecution at the same time.

"Whenever the facts of the case entitle the plaintiff to sue for breach of contract, or, at his election, for the wrong and injury, he may join statements of his cause of action in both forms, or either." Shannon's Code, sec. 4439.

There is nothing in the insistence that the defendant, Grissim, should have filed a petition for damages on the bond and also for malicious prosecution. It was held in the case of South Penn Oil Co. v. Stone, 57 S. W., 382, that a reference to the Master under Code section 6259 covered all damages recoverable, compensatory and exemplary, for malicious prosecution and on the bond.

The court said:

"The reference necessarily raises all of the elements of damages involved in such an inquiry."

In an action for wrongfully suing out an injunction damages may be assessed on account of malice and want of probable cause for which both principal and surety may be liable within the penalty of the bond, and for any excess arising under that head a judgment may be rendered against the complainant individually in his injunction suit for malicious prosecution, in the same action. Pyott Land & Mining Co. v. Tarwater, 126 Tenn., 601, 150 S. W., 539; Strong v. Duff (Ky.), 15 S. W. (2d), 517; Brandenberg v. Addison, 221 Ky., 442, 298 S. W., 1091; 14 R. C. L., 480, sec. 182; 32 C. J., 464, sec. 804.

Hence we hold that the first assignment of error is well made and must be sustained.

2. The second assignment, to the effect that the court erred in not granting a new trial because of the inability of the jury to agree upon its response to the fourth issue of fact, is not well made, for the reason that the issue was immaterial, in that the uncontroverted evidence showed that the injunction was sued out upon the advice of counsel after a full and fair statement of all of the material facts of the case.

3. The third assignment, that the court erred in charging the jury that advice of counsel might be taken into consideration by the jury as to whether the injunction was maliciously sued out without probable cause in answering issue number four, is likewise not well made and must be overruled.

Of course, a mistrial should be entered where the jury fails to agree on the material issues submitted. Buchanan v. Gower, 7 Higgins, 306; Minton v. Wilkerson, 133 Tenn., 484, 182 S. W., 238; Wright v. Jackson, 138 Tenn., 145, 150, 196 S. W., 488.

But in this case it is testified that the officers of the complainant told the attorney all of the facts of the case as far as humanly possible. This was objected to as a conclusion, but the Chancellor failed to exclude it.

The position taken by the plaintiff and its counsel was that the complainant owned the stockyards and premises in fee simple, and had a right to admit or exclude all those whom it desired, for cause or without cause, notwithstanding the Federal Packers & Stockyards Act of 1921. Although this position was erroneous, as later held by our Supreme Court in this cause, yet if the complainant fully, fairly and completely disclosed all the material facts to its counsel, and upon that information counsel advised bringing the suit in which the injunction was sued out, this advise of counsel if honestly sought and relied upon is a complete defense to a malicious prosecution suit.

"That the defendant in an action for malicious prosecution commenced the prosecution for which he is sued in pursuance of the advice of counsel establishes the existence of probable cause and, as a matter of law, entitles the party sued to complete immunity from damages, provided: such advice was hon-

estly sought, and all the material facts relating to the case, ascertained or ascertainable by due diligence, were presented to the counsel.'' Cooper v. Flemming, 114 Tenn., 40, 84 S. W., 801; Citty v. Miller, 1 Tenn. App., 1; Railroad v. Greeson, 1 Higgins, 369.

But the party must state not only all material facts within his knowledge but all facts which he had reasonable ground to believe existed at the time of making the statement, or all material facts which he could have ascertained by reasonable diligence. 38 C. J., 433-4; 1 Cooley on Torts, 3 Ed., 328; Cooper v. Flemming, supra; Railroad v. Greeson, supra; Mullins v. Hudson, 2 Hig., 352; Kendrick v. Cypert, 10 Hump., 291.

The presumption of law is that every prosecution is founded on probable cause and instituted only for purposes of public justice. 38 C. J., 386, 481. But this is as far as the presumption goes and the burden of proof is on the complainant to show that it relied on the advice of counsel, and it must further show that it made a full, correct and honest disclosure to counsel of all the material facts within its knowledge or that could have been ascertained by reasonable diligence, and that the advice was honestly sought and relied upon. 38 C. J., 479, 480.

In this case it is insisted that complainant did not disclose all the material facts to its counsel, in that its officers told the attorney that Grissim was dealing on the stockyards for himself, when it should have been stated that Grissim was only an employee of Bolling & Co., licensed tenants. We are of the opinion that this distinction is immaterial. It is true that Bolling & Co. had rented offices and were tenants of the Stockyards Company, and had a verbal license to go into the stockyards. The proof shows that one could enter Bolling & Co.'s offices without entering the stockyards property. There is no provision in Bolling & Co.'s rental contract granting a license to Bolling & Co. and their employees to enter the stockyards. The license was only verbally granted, which could have been revoked at will but for the Federal Packers & Stockyards Act. Hence the disclosure of the real situation was immaterial.

It is further insisted by Grissim that complainant's officers did not disclose to its attorney the dimensions of the stockyards so as to show that it came within the provisions of the Federal Packers & Stockyards Act of 1921. We think this contention is not well made, because complainant's witnesses testified that they did disclose to its attorney that the stockyards were of such dimensions as to come within the provisions of the Packers & Stockyards Act. This testimony is not controverted.

It is further insisted by Grissim that the real motive for excluding him from the stockyards was that they were trying to compel him to ship car loads of stock purchased at Lebanon, Murfreesboro,

Springfield, Gallatin and other places, through its stockyards at Nashville in order that it might collect fees for loading and unloading, feed, and for services in caring for the stock, which was arbitrary and unreasonable, in that, the same car of stock would have to be shipped back over the same road through the same town at great expense and loss of time in order that the stockyards might collect a toll. These questions were asked witnesses for complainant, and it was asked whether these facts were disclosed to its counsel when suit was brought, to which the witness replied that it had been five years ago, and that he could not remember all the details. Counsel for complainant interposed and stated that these facts had been set out in the amended bill. We are of the opinion that the disclosure of the real reason for shipping livestock through the stockyards was immaterial, in view of the position taken by complainant and its counsel, and that the disclosure of these facts would not have changed his opinion or advice, for the reason that complainant and its counsel took the position that it absolutely owned the stockyards and had a right to license dealers as it saw fit and to exclude them for cause or for no cause and that if a dealer entered the stockyards without its consent he was a trespasser. Hence, in this view of the situation, the disclosure of the reason for excluding Grissim was an immaterial fact that would not have changed the position taken by counsel for the Stockyards Company.

Advice of counsel given upon a full disclosure of the material facts, honestly sought and relied upon, being a complete defense to a malicious prosecution suit, and the testimony in this case being uncontroverted on these propositions, it results that the fourth issue submitted to the jury was immaterial, and the charge to the jury which was set out in the third assignment of errors was correct.

Probable cause involves a consideration of what the facts are and the reasonable deductions from the facts. It is, therefore, what is denominated a mixed question of law and fact. If the facts are not in dispute the question is for the court. Upon disputed facts the jury must be left to pass, but the court must determine on the facts found whether or not probable cause existed. As to what facts are sufficient to show probable cause is a question of law for the court, and whether such facts are proved by the evidence is a question for the jury. Hence, if there is no controversy about the facts, then it becomes a question for the court. 1 Cooley on Torts, 3 Ed., 321-2; 'Opinion of this Court in case of Frances Batson et al. v. Andrew Bell, Davidson County Law, filed April 12, 1930.

From the total absence of probable cause the law will infer malice. If a want of probable cause is shown, malice may be inferred, but the deduction is not a necessary one. It is not sufficient merely that the cause was maliciously prosecuted; it must also appear that the action was commenced or continued without probable cause. Malice,

alone, however great, is insufficient. Want of probable cause cannot be inferred from malice, however great such malice may be, even "the most express malice." 38 C. J., 401-2; 1 Cooley on Torts, 3 Ed., 337; Kendrick v. Cypert, 10 Hump., 294.

It is insisted that this case is different from the ordinary damage suit for the wrongful suing out of an injunction, in that the Packers & Stockyards Act provides that a party may recover "full amount of damages sustained" for an unjust discrimination in violation of said Act, and that, therefore, Grissim was entitled to recover for all losses actually sustained by him by reason of the wrongful suing out of the injunction. As we view it, this provision of the Packers & Stockyards Act adds nothing to the law already in force in Tennessee for the wrongful suing out of an injunction. Upon a showing of malice and want of probable cause the Chancery Court has jurisdiction to assess damages in excess of the penalty of the bond.

It is insisted that the injunction effected an unlawful discrimination and that one can be guilty of a violation of the Packers & Stockyards Act through the instrumentality of a court as effectually as in any other manner. But, this was originally an injunction suit and by demanding a jury under Shannon's Code, sec. 6259, in this same case Grissim is asking for damages for the wrongful suing out of that injunction; hence he is governed by the remedies provided for such cases, and in order to recover damages, irrespective of the bond, he must show malice and want of probable cause. If he shows that, he can recover compensatory damages and even punitive damages. But if he does not show malice and want of probable cause, he is not entitled to recover anything. Where one is wrongfully charged with murder or other heinous crime, he is done a great injustice, and he may suffer great damages, but if his accuser had a probable cause and did not maliciously make the charge no recovery can be had. Public policy favors prosecution for crime and affords protection for citizens causing the prosecution of another in good faith and on reasonable grounds. Free access to courts of justice is provided for the administration of the law of the land, and an action does not lie merely because they have been resorted to unsuccessfully. The same is true of civil prosecutions, and where one brings a suit in good faith and on reasonable grounds under advice of counsel honestly sought upon a full disclosure of material facts, he should not be compelled to respond in damages for the unsuccessful prosecution of the suit. See 38 C. J., 385-6. Hence, we are of the opinion that there is nothing in this proposition.

Hence, it results that we hold that Grissim is entitled to recover nothing on the malicious prosecution proposition, and that his recovery must be confined to the injunction bond. In view of this holding, the court's charge to the jury that the Chancery Court had no juris-

diction to try a malicious prosecution suit involving unliquidated damages to person, property, or character, while erroneous, did not affect the result, and the other two assignments of error being overruled, it results that the judgment of the lower court must be affirmed. A decree will be entered in this court for $500 together with interest thereon from March 15, 1929, in favor of Grissim and against the complainant and the sureties on the injunction bond, and the cost of the cause below, for which execution may issue. The cost of the appeal is adjudged against Grissim and the sureties on his appeal bond, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.