Aetna Life Insurance Co. *v.* Alexandria Bellos, Executrix *et al.**

(*Nashville.* December Term, 1928.)

Opinion filed February 23, 1929.

*As to effect of suicide clause in policy of life or accident insurance as affected by incontestable clause, see annotation in 55 A. L. R., 549.

KEEBLE, SEAY, STOCKELL & KEEBLE, for complainant, appellant.

W. E. NORVELL, H. F. TAYLOR and E. J. GLENNON, JR., for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

*(1)* This bill was filed to cancel a policy of insurance on the life of a deceased assured on the ground of misrepresentation in its procurement, and, in the alternative, to enjoin suit thereon in any other forum on the ground of suicide of the assured within one year, liability in such case being limited to the repayment of the premium, which was tendered.

A demurrer was sustained by the Chancellor on the ground of repugnancy and complainant has appealed.

Repugnancy was held to appear in that in one aspect of the bill the right to relief was rested on the avoidance of the contract, and in the other on its limited enforceability.

*Scales* v. *Insurance Co.*, 155 Tenn., 412, was relied on as emphasizing the distinction between these two positions, and *Montlake Coal Co.* v. *Chattanooga,* 137 Tenn., 449, for the holding that remedies of rescission and of reformation of a contract are inconsistent and repugnant. *Bynum* v. *Ewart,* 90 Tenn., 654, also, was relied on as supporting the defendant's theory of repugnancy.

The *Scales case, supra,* was a suit brought on a policy by the beneficiary, and while the Court made clear the distinction between a reliance on the terms of a contract, and a repudiation of its validity, no issue of repugnancy was involved. And, in that case, distinguishing between proceedings to invoke rescission or annulment for misrepresentation in procurement, and proceedings to give application to the suicide clause, it was said, in distinguishing language pertinent here, that, "in one case affirmatve action by the insurer is required, and within a limited period; in the others the action is defensive only."

In the oversight of this distinction appears to lie the vital defect of the bill before us. It is not so much a matter of repugnancy, as an unwarranted attempt to institute an action, by incorporation in the bill filed primarily for a distinct purpose, to which complainant has no right. The action to test and apply the suicide clause and for relief thereunder is "defensive only."

(2) The bill appears to be properly filed insofar as it seeks annulment of the policy contract on the grounds alleged, but we think it clear that complainant had no

right to affirmative relief, either injunctive, or otherwise, in the second aspect of its bill. The defendant beneficiary alone, if the contract is in force, has the right of action thereon. She may demand and bring suit to compel payment of the policy according to its terms at her election, choosing her time and forum. Until she chooses to act, complainant has no wrong to remedy and no right to enforce. No conditions are presented which call for or justify affirmative court action by the insurer on the policy contract, aside from a contest of its validity. The axiom "no wrong without a remedy" is conversely true —no remedy without a wrong; That is to say, until one claims to have been wronged, or asserts an actionable right, the courts are not open to him.

In the instant case we find no ground on which complainant can force defendant into a forum, and at a time, of complainant's choosing, and thus compel defendant to litigate the issue of the suicide of her husband.

The case in this aspect is not one for a declaratory judgment, even were the bill with its prayer framed to this end. The principles governing declaratory judgment proceedings, announced in *Newsum* v. *Interstate Realty Co.*, 152 Tenn., at pages 304, 305, apply here. Disputed facts would here be determinative issues, rather than "construction of definitely stated rights, *status,* and other relations, commonly expressed in written instruments," etc.

Nor is this affirmative action justified by a threatened multiplicity of suits, or apparent necessity of reliance upon purely equitable defenses, which are recognized as grounds for appeals to a court of equity in avoidance of embarrassment. The prayer, going to this aspect of the bill, is for an injunction to restrain the defendant "from seeking to enforce the said policy of insurance in any

court other than this Court," etc. Fundamentally the remedy of injunction is to prevent a wrong. It had its origin in the inadequacy of the relief obtainable in actions for damages. No threat of a wrong, or of possible damage, is here set up. The bringing of her suit on this policy when, where and as she may elect, if at all, is the exclusive right of the holder, and her exercise of this right involves no wrong to complainant.

It results from the views expressed that so much of the bill as sought to have adjudicated in this suit, and no other, the amount of the liability of the complainant under its valid contract of insurance, requiring a decision particularly of the issue of the suicide of the assured, was clearly demurrable. A motion to dismiss the bill in this aspect, and as to this part, would have been well grounded, or the Court might well have dismissed the bill with respect to this phase of it on its own motion, as without equity.

It is plausibly urged that the learned Chancellor was in error in sustaining that ground of the demurrer which challenged the bill for repugnancy. In *Bynum* v. *Ewart,* and in *Montlake Coal Co.* v. *Chattanooga; supra,* the complainants were seeking to *enforce* contract obligations on alternative grounds which were antagonistic. Asking affirmative relief and relying on the contract, they asserted (1) the validity of the contract, and, in the same suit, in the alternative, (2) attacked its validity and sought to recover equivalent relief on this inconsistent theory. This, it was properly held in these cases, was objectionable for repugnancy. Complainant here is not relying on and seeking to *enforce* a contract in either aspect of its bill, but to obtain relief *from* it not *on* it. In the one aspect it seeks to repudiate it for invalidity in

its making; in the other aspect it maintains that if valid and the *beneficiary* may rely on it, the obligation under it is limited by its terms to the amount of the premiums paid, which is nominal. Both are defenses against the insurance contracted for. One may be asserted affirmatively, *eo necessitas,* because of the limit of time, but not so the other.

*(3)* The principle of repugnancy in pleading is that one may not rely on a contract and at the time time deny its validity. Its application appears to be confined to affirmative rather than defensive positions. Sued on a contract one may defend by a denial of its validity and at the same time an assertion of its satisfaction. The defendant may rely for his defense upon the plea that the execution of an obligation was procured by misrepresentation or fraud and is therefore invalid and nonenforceable, and at the same time show that if binding the extent of his liability is limited by its terms, or reduced or satisfied altogether by payments; or that the consideration for it has failed. For illustration, take the instant case. If the beneficiary had brought suit on the policy within the contestable period, the Insurance Company defending might have denied liability on the ground, first, that the policy had been procured by misrepresentation, and, second, that the assured had committed suicide within one year, and that the liability was thereby limited to the amount of the premium.

*(4)* Since the statute of 5 Anne the pleading of different defenses has obtained, and in modern practice, independent of code provisions like ours in Tennessee, inconsistent pleas are quite generally permitted, "not withstanding apparent repugnancy between them." 31 Cyc., 148. In this State our statute (Shan., 4628) is ex

plicit in providing that the "defendant may plead as many pleas as he has real grounds of defense." And this Court has expressly held that "these pleas may be inconsistent." *Shelby Co.* v. *Bickford,* 102 Tenn., 408. In that case, the defendant plead first a denial of the undertaking or covenant sued on, and second that he owed nothing on it. *Non est factum* and payment may be joined. So there can be no doubt that *as defenses* both the grounds of nonliability set up in the bill would be available to the Insurance Company.

The apparent confusion here arises out of the fact that while the action is in substance defensive, it is in form affirmative. But it is nevertheless true that, complainant though it is, the Insurance Company here is not bringing an action to recover on the contract, but for relief from it.

But, however this may be, as before stated, we are of opinion that the bill states a good cause of action in its first aspect and should be sustained to that extent, but complainant is entitled to no relief in the second aspect. The cause being here *de novo* this Court may do what it appears to us should have been done by the learned Chancellor, namely, dismiss the bill insofar as it seeks to adjudicate the claims of the defendant under the suicide clause of the policy, and permit it to stand insofar as it seeks to contest its validity for misrepresentation in its procurement. The decree will be so modified and the cause remanded for further proceedings in accordance with this opinion. The costs of the cause to this date, including the costs of the appeal, will be paid by the appellant.

ON PETITION TO REHEAR.

The Insurance Company in a petition to rehear invokes application of certain maxims of equitable jurisdiction, namely, (a) that when the court takes jurisdiction for one purpose, it will take jurisdiction for all purposes; (b) equity delights to do complete justice, and not by halves; and (c) equity will take jurisdiction to avoid a multiplicity of suits. Based thereon, it is urged that the Court, having taken jurisdiction to set aside and void the contract of insurance for fraud in its making, will take jurisdiction to determine an issue to arise in case the contract is held valid, that is, whether or not the insured committed suicide.

(1) While disposed to the view that these issues were not strictly repugnant, both going, on analysis, to defense against liability to pay the loss, they are nevertheless entirely independent and unconnected, distinct issues, or causes, of defense—two separate law suits, as to which the proof must be wholly different and unrelated. One is a purely equitable issue, the other a legal defense. Confusion and complication result. Not questioning the soundness of the maxims invoked, nor the power of a court of equity, having taken jurisdiction of a controversy to dispose of all questions growing out of, or connected with it, in application of these general principles care must be taken to avoid violation of basic laws of pleading and fundamental rights of litigants.

(2) One of these fundamental rights is that of election, or choice, between remedies and forums. "If both a court of law and a court of equity have concurrent jurisdiction over the subject matter, a party may elect as to the tribunal which shall determine the controversy." 20

C. J., p. 40; 9 R. C. L., p. 964, citing *Bradford* v. *Furniture Co.*, 115 Tenn., 610, 62 S. W., 1104, 9 L. R. A. (N. S.), 979. While in a proper case injunctions may issue against suits at law before judgment, special grounds for equitable intervention must be shown, and every such case is subject to a sound discretion vested in the Chancellor, which will be exercised only to do justice, and never, as already said, where fundamental rights will be violated, or orderly procedure disturbed.

*(3)* In the instant case an important right of the claimant under the policy of insurance has been stressed in our original opinion. A basic principle of pleading is also involved, termed generally multifariousness, here more specifically misjoinder. In *Miller* v. *Harris*, 68 Tenn. (9 Baxt.), 101, it is said that, ''a bill is multifarious when several matters of a distinct and independent nature are complained of against divers defendants, *or where one bill unites against a single defendant several matters perfectly distinct and unconnected*. The latter is more properly called misjoinder. . . . The Court must look to the circumstances of each case, to avoid on the one hand multiplicity of suits, and on the other, inconvenience and hardship to defendants, in *being called upon to defend as to matters that have no connection, and to avoid complication and confusion of evidence*. Story Eq. Pl., secs. 274, 530; 2 Gray, 471; 3 Stor. C. C., 25.'' The italics used by us direct attention to particularly pertinent language. Also, see 14 Ency. of P. & P., at pages 199 and 200, and notes.

And, Mr. Gibson, so strongly relied on by petitioner, says (note on page 134, Suits in Chancery), ''Chancellors dread a complicated litigation. They yearn to have all suits present clear cut, well-defined issues; and they

abhor the confusion and complexity that result from the attempt to join disconnected matters in one suit. . . . All Courts seek to have as few issues of fact in a lawsuit as possible. The greater the number of issues, the greater the difficulty in reaching satisfactory conclusions, and in doing exact justice.'' Before two or more causes of complaint, although growing out of the same transaction, may be litigated in one suit, the *relief asked for in relation to each must be of the same general character*. The whole question is one resting in the sound discretion of the Court. ''It is not the number of the parties, nor the intricacy of the claims on the one side or the other, that renders a bill multifarious; it is their disconnection or inconsistency, or the practical inconvenience of considering them together in one suit.'' (Gibson, idem page). Here we have ''disconnection,'' if not inconsistency, and quite apparently, ''inconvenience.'' Though not strictly subject to objection as multifarious, we have here, ''in fact, properly speaking, a misjoinder of causes of suit, the cases or claims asserted in the bill being of so different a character, that the Court will not permit them to be litigated in one suit.'' (Gibson, sec. 284.) Misjoinder may exist even though, as here, but one thing, or object, may be involved. Wholly distinct and disconnected subjects, matters or causes of litigation may nevertheless be presented. For illustration, a suit to assert title to an automobile could not properly be joined with a suit to recover damages for personal injuries inflicted in its negligence use.

In the instant case, an orderly procedure essentially requires that the wholly independent issue of the original validity of the contract be first litigated and determined, separate and apart from the question of the applicability

of the suicide clause. The proof and the procedure called for to establish these wholly independent and disconnected issues are essentially different. While the Chancery Court would have jurisdiction, when properly invoked, to determine the latter issue, it is a legal and not an equitable issue, as is the former. Legal principles apply to the one, and equitable principles to the other.

(4) In view of what has been said, we are of opinion that, if both of these issues are to be determined in the Chancery Court, a proper exercise of the Court's discretion would require that they be litigated in two independent suits, in order to insure orderly procedure and avoid confusion and complexity.

For these reasons, in addition to those given in our original opinion, we hold that complainant may not force the defendant to litigate in this cause the issue arising under the suicide clause.

However, it was not intended to hold that the Chancellor might not, pending disposition of the question of the validity of the original contract, restrain by injunction the issuance of execution under any judgment obtained by defendant herein in a separate suit on this contract, or, in his discretion, the prosecution of such suit. Should such a contingency arise, this would afford adequate protection and conserve the rights and interests of complainant.

Without reviewing the authorities cited by petitioner, it suffices to say that in none of these cases was relief sought or granted as to matters wholly disconnected and unrelated to the main issues. In each case the relief granted grew out of, was connected with, or consequent upon the main theory of the bill. In none of them was a party deprived of his fundamental right to select his own

forum in the prosecution of a demand, as to which he alone had the election of action, and wherein legal rights only were involved, and where the defense of the defendant were unembarrassed. The petition to rehear is dismissed.