Everett PETTY, Ethel Petty Nelson, Fairor Petty Lee, Jill Petty Smith, Jo Ann Petty Hassig, Bettie Petty Brown, Jerry J. Petty Bargy, Walter Dean Petty and Jack Petty, Appellants,

v.

Anna CALL, Clint Gunter, Lola Call, Georgia Cunningham, Mable Rodgers, Wyla Jo Rodgers Page, Jerry Mac Rodgers, Walter Y. Sellers, Leta P. Sellers, Paul F. Bachman, Trustee, and The Federal Land Bank of Louisville, Appellees.

Supreme Court of Tennessee.

June 2, 1980.

792

Jere C. Gordon, Kenton, for appellants.

Bruce Conley, C. W. Miles, III, Miles &
Miles, William B. Acree, Jr., Elam, Glasgow,
Tanner & Acree, Union City, Harry Max
Speight, Dresden, Earl P. Davis, Davis &
Davis, Memphis, for appellees.

OPINION

FONES, Justice.

Plaintiffs are heirs of Cora Crabtree who
contend they would collectively take one-
fourth of her estate if her will leaving her
entire estate to Billie Rodgers, a non-rela-
tive, had been declared invalid. The con-
test to declare it invalid was instituted by
defendants, Anna Call, Clint Gunter, Lola
Call, and Georgia Cunningham, hereinafter
called contestants, who are all but one of
the other heirs of Cora Crabtree. Prior to
trial, contestants settled with the propo-
nents of the will, who were heirs of Billie
Rodgers. The contestants received a quit-
claim deed to 114.85 acres of land from
proponents in exchange for a quitclaim
deed conveying to proponents a lot in
Obion, Tennessee and two tracts of land
totaling 188.85 acres. The quitclaim deed
to proponents was executed September 10,
1976, and recorded on September 21, 1976.
The quitclaim deed to contestants was exe-
cuted the 13th day of September, 1976, and
recorded September 30, 1976. On Septem-
ber 17, 1976, the will contest in the Circuit
Court of Obion County came on for trial
and a judgment was entered reciting that
the parties waived a jury and that the
Court found "[t]he issues joined in favor of
the plaintiffs . . . that the writing in
issue mentioned is the last will and testa-
ment of Cora Crabtree, deceased." Plain-
tiffs' complaint asserted that no proof
whatever was presented by contestants.

Plaintiffs contend that their complaint
states a cause of action entitling them to a
trial on the issues of (1) whether contest-
ants were required to give them notice of
the filing of the will contest and of the
settlement, and (2) their charge that the
settlement agreement and non-contest of
the will was a fraudulent, collusive scheme
between contestants and proponents, the
purpose of which was to defraud plaintiffs
of their interest in the estate of Cora Crab-
tree.

The learned chancellor sustained the mo-
tions of defendants that the complaint
failed to state a claim upon which relief

could be granted. The Court of Appeals affirmed.

### I.

The complaint alleges that contestants executed and delivered a warranty deed to defendants, Walter Sellers and wife Leta Sellers after their purchase of the property at a widely advertised auction. We agree with the Court of Appeals that the Sellers were innocent purchasers for value. The issue of whether notice to all heirs of Cora Crabtree was required to validate the judgment in the will contest is relevant to and will be considered along with the status of the Sellers as innocent purchasers for value.

■■■ Since statehood our cases have consistently held that a will contest is a proceeding in rem, and the res being the estate of the deceased, all persons who have any just or colorable claim, in the event of testacy or intestacy, have a right to become parties, but failing to do so they are bound by the result, which is conclusive upon all the world. *E.g. Jones v. Witherspoon*, 182 Tenn. 498, 187 S.W.2d 788 (1945); *Lillard v. Tolliver*, 154 Tenn. 304, 285 S.W.2d 576 (1926); *Larus v. Bank of Commerce & Trust Co.*, 149 Tenn. 126, 257 S.W. 94 (1923); *Fry v. Taylor*, 38 Tenn. 594 (1858); *Patton v. Allison*, 26 Tenn. 320 (1846); *Hodges v. Bauchman*, 16 Tenn. 186 (1835); *Arnold v. Marcom*, 49 Tenn.App. 161, 352 S.W.2d 936 (1961).

■■ In Tennessee, the right to intervene in a will contest is not accompanied by the right to notice of its filing. That may be considered somewhat perplexing in light of the fact that probate in solemn form requires notice to interested parties in order to be bound by the proceedings, and the trial of the issue, *devisavit vel non* in the circuit court, "amounts to the probate of a will in solemn form." *Bearman v. Camatsos*, 215 Tenn. 231, 238, 385 S.W.2d 91, 94 (1964); *see* 1 Pritchard, *Wills and Estates* § 328 (3d ed., H. Phillips 1955). In addition, our research discloses that forty-three states have statutes requiring notice of the filing of a will contest, to variously described interested parties. The statutes in

twelve of those states are modeled after the notice prescribed in the Uniform Probate Code.

■■ We have found no Tennessee case that has directly considered the question of the necessity to notify all interested persons of the filing of a will contest. The probate and contest of wills are basically statutory rights and statutory proceedings, derived not from the common law but from the ecclesiastical courts of England. *See Lillard v. Tolliver, supra; Jones v. Witherspoon, supra; Arnold v. Marcom, supra.* Our research convinces us that this Court has not seen fit to mandate a requirement of notice to all interested parties based upon rationale expressed in *Hodges v. Bauchman, supra,* and *Brown v. Brown,* 86 Tenn. 277, 6 S.W. 869, 7 S.W. 640 (1888).

> "The probate of a will, or the granting letters of administration, is a proceeding in the nature of a proceeding *in rem*, operating on the subject-matter, and binding generally; the probate is evidence of title, without reference to parties, who do not and cannot regularly exist in such cases. . . .

> . . . . .

> All who are interested may become parties in conducting the litigation in case of a contested will, and, if they do not, it is indispensable to the repose of society that they be concluded. Were it otherwise, and, ten or twenty years after the first trial was had, the estate distributed, and the devisees of the lands at rest, their titles might be upturned in whole, or, as here contended, in part.

> We are called upon, perhaps for the first time, to give a construction to the act of 1789 ch. 23, providing for the probate of wills and the mode of contesting their validity. . . .

> The act does not speak of parties plaintiffs and defendants—no such idea was in the minds of the legislature; it was made the duty of the court of probate to ascertain whether the will had been duly executed, without reference to the individuals interested in the result of admit-

ting the will to record; the court was bound to act upon the subject-matter, and to settle the title to the property, late of the testator, left without an owner. The interests of society admitted of no delay. If any one or more, interested in the result, objected to the validity of the will, then the court was ordered by the statute to make up an issue, will or no will, and try the fact before a jury, minding to examine all the living witnesses to the will, and to hear such other proofs as those interested might adduce, and, according to the finding of the issue by the jury, record the will or reject the paper presented as such. But this was a proceeding for the ends of justice of a public nature, and conclusive on the world." 16 Tenn. at 187–90.

In *Brown v. Brown, supra*, on petition to rehear, the Court was examining the principles governing will contests and made these comments with respect to the nature of proceedings in rem:

> "It may be sufficient to say that in proceedings *in rem*, all persons in interest are parties or, as it is sometimes said, the whole world are parties, and any person having an interest in the property may interpose a claim and prosecute an appeal from the sentence or decree; and it is said that notice is served upon the thing itself, and that thereby all persons interested are presumed to have notice, because it is a part of common prudence for all persons who have an interest in the property to guard that interest by persons who are in a situation to protect it. *Croudson v. Leonard*, 4 Cranch 437, 2 L.Ed. 670; *The Mary*, 9 Cranch 144, 3 L.Ed. 678." 86 Tenn. at 319, 7 S.W. at 647.

■ It may be that given our mobile society and our expanded concept of due process that interested parties should not be bound by the results of a trial or settlement of will contest in the absence of notice. As indicated, the forty-three states that now require notice to interested parties in will contests have accomplished this by legislative action, and we are of the opinion that the propriety of such a requirement in Tennessee is a matter for the Legislature rather than the judiciary.

■ Having concluded that notice to all of the heirs was not required, we find no deficiencies upon the face of the record in the circuit court proceeding that resulted in a judgment upholding the will of Cora Crabtree. It follows that defendant Sellers and wife were entitled to rely upon that judgment as conclusive upon the world.

■ A purchaser for value, absent actual knowledge of fraud, cannot be required to look behind a final court decree adjudicating the issue of *devisavit vel non* for possible fraud and collusion between the proponents and contestants. *Cf. Fry v. Taylor, supra; Larus v. Bank of Commerce & Trust Co., supra*. Such a holding would be directly contrary to the rationale of will contests as an in rem proceeding that public policy demands be speedily pursued to final judgment that is conclusive upon the world. In *Reeves v. Hager*, 101 Tenn. 712, 50 S.W. 760 (1899), Hager purchased land from the beneficiary in a will probated in common form, which was attacked and set aside fifteen years after probate and eight years after the sale to Hager. Holding Hager to be an innocent purchase for value, the Court said, in part:

> "In our State there is no express limitation of time within which a contest may be made of a will, even though it may have been probated in common form; so that a holding different from this would make it practically impossible to make an indefeasible title to property devised, inasmuch as the will may be at any time set aside and titles acquired thereunder may be questioned. Not only the title of the legatee or devisee would remain indefinitely defeasible, but so would that of the executor and of a purchaser, although he may have bought in good faith and paid full values." Id. at 720–21, 50 S.W. at 762.

Since *Hager* our Legislature has enacted a seven year statute of limitations, but that does not diminish the rationale under which *Hager* was held to be an innocent purchaser for value.

There being no allegation that less than full value was paid by the Sellers or that they had any actual knowledge of the alleged fraud, the lower courts were correct in dismissing the action as to defendants Walter Sellers, Leta Sellers, Paul F. Bachman, Trustee, and the Federal Land Bank of Louisville.

## II.

The Court of Appeals held that the charges of fraud were alleged in general terms and failed to state a cause of action, citing *State v. Hobbs*, 194 Tenn. 323, 250 S.W.2d 549 (1952), and *Maxwell v. Land Developers*, 485 S.W.2d 869 (Tenn.App. 1972).

■ We think plaintiffs' cause of action sounding in fraud should be tested by the requirements of T.R.C.P. 8.01 and 9.02, bearing in mind that upon a T.R.C.P. 12.-02(6) motion the truth of all relevant and material averments are admitted.

Tennessee Rules of Civil Procedure 9.02 reads as follows:

9.02. *Fraud, Mistake, Condition of the Mind*

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated, with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

The Committee Comment contains the following elucidation of the sentence:

"The requirement in Rule 9.02—in averments of fraud or mistake the circumstances constituting fraud or mistake must be set forth with particularity—is not intended to require lengthy recital of detail. Rather, the Rule means only that general allegations of fraud and mistake are insufficient; the pleader is required to particularize, but by the 'short and plain' statement required by Rule 8.01."

The complaint alleges all of the details of the exchange of quitclaim deeds a few days before the trial date and the withholding of recording same until after the judgment was entered, reciting that the issue joined was decided in favor of the will, when in fact, no proof attacking the will was presented. It was alleged that contestants knew the address and telephone number of Everett Petty and knew that he could supply the whereabouts of all other Petty heirs, if they were unknown to contestants, but that no effort was made to inform plaintiffs of the will contest or the settlement. It is an alleged and undisputed fact that less than forty days after the settlement by exchange of deeds, the judgment in the will contest was final and conclusive against plaintiffs and effectively deprived them of any share of the estate of Cora Crabtree. The complaint alleges that the settlement agreement and the manner in which it was consummated was a deliberate fraudulent scheme having as its purpose and design to circumvent or deprive plaintiffs of any right, title or interest in the real property in the estate of Cora Crabtree.

*Gibson's Suits in Chancery,* Fifth Edition, Section 980 reads in part as follows:

"All frauds grow out of relations, and are those violations of the duties arising from relations, caused by bad faith."

Among the relations specified in the section are those imposed by "kinship, law, or social duty. . . ."

■ Of course, the trier of fact may find that both contestants and proponents acted in the utmost good-faith and settled the case solely for the purpose of terminating expensive and uncertain litigation. But, in our view, plaintiffs' complaint alleges a state of facts and a fraudulent "condition of mind" that produced a result detrimental to them and beneficial to contestants and proponents, all with sufficient particularity to state a cause of action sounding in fraud.

■ In this Court, as in the Court of Appeals, plaintiffs infer that if they are successful in attacking the settlement for fraud, they would be entitled to participate in the proceeds of the settlement to the extent of their respective interests as heirs of Cora Crabtree. The Court of Appeals rejected that contention which was based

principally upon the assertion that a will contest is in the nature of a class action brought for the benefit of all the heirs at law of the testator and that any settlement of that action would inure to the benefit of the class.

We agree that the rationale of *Bailey v. McLain,* 215 N.C. 150, 1 S.E.2d 372 (1939), cited by the Court of Appeals is a correct statement of the law and determinative of that contention.

A will contest may be brought by any one interested party, and all other interested parties are free to join the contestant, join the proponent, or stand aloof. Those who are cast in the litigation may settle, if they do so in good faith, but any compromise of the contest will not inure to the benefit of the non-participating heirs, but on the other hand, if trial of the issue results in an adjudication that the will is invalid, the non-participating heirs take their respective shares of the intestate decedent's estate. The rationale for that result was expressed by the North Carolina Supreme Court in *Bailey v. McLain, supra,* as follows:

> "There is no plane of cleavage in interest that would justify a legal presumption that the heirs at law are making a common fight, . . . . (Citations omitted.) The fact that the proceeding is in rem argues against any solidarity of attack, since the question is whether the paper writing presented is the last will and testament of the decedent. If it is not, it cannot be made so by common consent. (Citations omitted.) The law does not regard the will as a thing to be sustained sub modo only after something has been sweated out of it for the heirs at law. Mental capacity and duress are conditions which cannot be altered nunc pro tunc by mere agreement of the parties on an issue of devisavit vel non. When attention has been drawn to these principles, so firmly planted in our law, it should be clear that any compromise must be dehors the proceeding and does not necessarily inure to the benefit of the 'heirs at law', or, more properly speaking,

in this case, distributees. Where the will is set aside, of course the laws of distribution and inheritance apply; not because the will is vacated, but because there never was a will. In that event, no person entitled through those laws is estopped because of any want of cooperation in the proceeding, or by any act which does not convey his interest in the inherited property." 1 S.E.2d at 374–75. *See also, Dunn v. Shealey,* 184 Ga. 146, 190 S.E. 349 (1937); *Hull v. Roseman,* 28 Ohio Op.2d 31, 198 N.E.2d 792 (1964).

There is an additional reason why plaintiffs cannot share in the fruits of the settlement. Equity will not countenance the inherent repugnancy involved in attacking a settlement on the ground of fraud and at the same time asserting a right to participate in the fruits of the fraudulent scheme. *Cf., Aetna Life Insurance Co. v. Bellos,* 158 Tenn. 554, 13 S.W.2d 795 (1929).

If fraud has been perpetrated on plaintiffs, the direct result thereof was loss of the right to contest the will of Cora Crabtree. Plaintiffs have sustained no recoverable loss unless the will of Cora Crabtree, was, in fact, invalid. It follows that plaintiffs must plead and prove that additional issue, in this action, before they are entitled to any relief.

The judgment of the Court of Appeals is affirmed as to defendants Walter Sellers, Leta Sellers, Paul F. Bachman, Trustee, and the Federal Land Bank of Louisville and reversed as to the remaining defendants, and the case is remanded to the Chancery Court of Obion County for further proceedings consistent with this opinion. Costs in this Court are adjudged against the defendants Anna Call, Clint Gunter, Lola Call, Georgia Cunningham, Mable Rodgers, Wyla Jo Rodgers Page and Jerry Mac Rodgers.

BROCK, C. J., and COOPER, HENRY, and HARBISON, JJ., *concur.*