IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 1, 2017

## IN RE: ESTATE OF VIDA MAE MCCARTT

Appeal from the Chancery Court for Morgan County
No. P-6-12, 14-79   Frank V. Williams, III, Chancellor

_____

No. E2016-02497-COA-R3-CV

_____

Appellant brought this action challenging the settlement agreement reached by the contestants in a will contest.  Appellant, the legitimated child of Decedent's deceased son, filed suit to set aside the settlement agreement based on allegations that the will contestants, including Appellant's half-siblings, i.e., Appellees, engaged in fraud and misrepresentation in an effort to exclude Appellant from her share of Decedent's estate. Because Appellant had knowledge of the will contest, chose not to participate in the will contest, and there is no evidence that the Appellees acted in bad faith or fraudulently, we conclude that the trial court did not err in refusing to order a share of the Decedent's estate to be distributed to Appellant. Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and W. NEAL MCBRAYER, JJ., joined.

Robert W. Wilkinson, Oak Ridge, Tennessee, for the appellant, Sara Shannon Armes.

David H. Dunaway, LaFollette, Tennessee, for the appellees, Susan Collins, Nancy Wilson, and Joe McCartt.

## OPINION

### I. Background

This is the second appeal of this case involving an agreement among the heirs of Vida Mae McCartt ("Decedent") regarding the distribution of assets of Decedent's estate.

As set out in our first opinion, ***In re Estate of Vida Mae McCartt***, No. E2014-02185-COA-R3-CV, 2015 WL 5635114 (Tenn. Ct. App. Sept. 25, 2015) ("***McCartt I***"), on February 2, 2012, Decedent died testate at the age of 102. ***McCartt I***,. at *1. Decedent had five children: Betty Jane McCartt Newman, Mary Elizabeth McCartt Sanders, G.M. McCartt, A.K. McCartt, and J.D. McCartt, Sr. ***Id***. When Decedent executed her will, on May 18, 1994, her son, A.K. McCartt, was deceased. ***Id***. Decedent's will bequeathed $5,000 each to A.K. McCartt's two children, Kelly McCartt and Ginger McCartt West. ***Id***. To J.D. McCartt, Sr., who predeceased Decedent, but died after Decedent executed her will, Decedent bequeathed a mobile home and a truck. ***Id***. The remainder of Decedent's property, including real estate holdings of more than $1,000,000, was divided evenly among her three surviving children. ***Id***.

On February 23, 2012, a will contest was filed by Decedent's five grandchildren: Kelly McCartt and Ginger McCartt West, children of the deceased A.K. McCartt; and Appellees, Susan Collins, Nancy Wilson, and Joe McCartt, the children of the deceased J.D. McCartt, Sr.. By their complaint, the grandchildren averred that the May 18, 1994 "instrument is not the Last Will and Testament of Vida Mae McCartt . . . because she was . . . of unsound mind at the time said paper was executed and she was incompetent to make a valid Will." The grandchildren further averred that Decedent was unduly influenced by G.M. McCartt. ***McCartt I***, at *1. Thereafter, the parties participated in court-ordered mediation, which culminated in a September 24, 2012 agreement, resolving all issues among them. ***Id***. at *2. On November 20, 2012, the trial court entered an order, which incorporated the parties' September 24, 2012 agreement. The November 20, 2012 order divided Decedent's real, personal, and residual property, awarding a one-fifth share to each of Decedent's three surviving children, one-fifth to the heirs of A.K. McCartt, and one-fifth to the heirs of J.D.McCartt, i.e., Appellees. The parties' September 24, 2012 agreement further provides that

> if any claims are filed by individuals asserting an interest as an illegitimate child of J.D. McCartt, then the heirs of J.D. McCartt agree to indemnify and hold harmless all other heirs of Vida Mae McCartt from any claims which may be pursued by purported heirs at law of J.D. McCartt.

On November 4, 2013, Appellant Sara Shannon Armes filed a complaint, alleging, in relevant part, that:

> On February 23, 2012 a Complaint to Contest Will was filed with this honorable Court in behalf of several of the decedent's grandchildren. In the Complaint, it is asserted that J.D. McCartt, Sr., one of Vida Mae McCartt's children, predeceased his mother and left surviving him three (3) children, Susan Collins, Nancy Wilson, and Joe McCartt. In fact, J.D. McCartt had four (4) children, one of whom is Sara Shannon Armes.
> Pursuant to Final Order dated December 7, 2004, in the matter styled

*In re: Estate of Joseph D. McCartt*, docket number P–14–02, this honorable Court determined that Sara Hickman (now Sara Armes) is the daughter of Joseph D. McCartt. A copy of the Final Order is attached hereto and made a part hereof. Further, pursuant to Final Settlement of Administrator dated March 1, 2005, Sara Hickman (now Sara Armes) was entitled to a child's share of the residuary estate of her father, equal to that of Susan V. Collins, Joseph D. McCartt, Jr., and Nancy K. McCartt.

On November 20, 2012 an Agreed Order was entered in this cause of action which approved and incorporated a mediated agreement. This Agreement resolved the issues between the parties relative to the will contest and determined that the heirs of J.D. McCartt should receive a twenty percent (20%) interest in certain liquid assets . . . and certain specified real property from the Estate of Vida Mae McCartt, deceased. The heirs of J.D. McCartt are listed as Joe McCartt, Susan Collins, and Nancy Wilson.

Sara Shannon Armes avers that she, by law, should be included as an heir of J.D. McCartt and therefore entitled to one-fourth (1/4) of the distribution of assets passing to the heirs of J.D. McCartt.

Sara Shannon Armes further avers that Joe McCartt, Susan Collins, and Nancy Wilson have perpetrated a fraud on this honorable Court by asserting that J.D. McCartt had only three (3) heirs-at-law when each and every one of them knew that J.D. McCartt had four (4) heirs-at-law.

PREMISES CONSIDERED, PETITIONER RESPECTFULLY REQUESTS

\* \* \*

That upon a hearing in this cause, this Court determine that Sara Armes is entitled to receive an equal share of the distribution of assets passing to the heirs of J.D. McCartt from the estate of Vida Mae McCartt.

Further that the Court award damages to Petitioner as a result of the fraud of Joe McCartt, Susan Collins, and Nancy Wilson.

*McCartt I*, at \*2-\*3. Attached to the complaint was a copy of the December 8, 2004 final order of the Morgan County Chancery Court in the matter of J.D. McCartt's estate, stating:

This cause came to be heard ... upon the Petition for Elective Share filed by [Armes], the Answer filed in behalf of the estate [of J.D. McCartt, Sr.], the testimony of witnesses, [and] the Parentage Testing Report from Molecular Pathology Laboratory Network, Inc., a copy of which is attached hereto and made a part hereof, and the record as a whole from all of which

the Court finds as follows:

> Based on the proof introduced in this cause, the Court is of the opinion that [Armes] is the daughter of the decedent, J.D. McCartt.

> The results of the DNA test referenced by the court's order established a 99.9586% probability that Armes is the daughter of J.D. McCartt, Sr.

*McCartt I*, at *3. In response to Ms. Armes' complaint, the Decedent's grandchildren filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim. As grounds for their motion, the grandchildren averred that:

> The Complaint should be dismissed on the basis [of] Res Judicata. The original litigation is a will contest and an In Rem proceeding. A Final Order has been entered and it is a conclusive adjudication upon all heirs; and Sara Shannon Armes is bound[ ] by the ruling.

> At best, any claim of Sara Shannon Armes is limited to the next of kin of J.D. McCartt and has no impact, whatsoever, and fails to state a claim as to any other heirs, other than Joe McCartt, Susan Collins and Nancy Wilson; and it fails to state a claim even as to those three heirs.

*McCartt I*, at *3. Betty Jane Newman and G.M. McCartt also filed a motion to dismiss, arguing that "Armes' lawsuit is in the nature of a lawsuit to contest the will; or more specifically the probation of the will," and because "Armes did not join in the original lawsuit to contest the will, (which she should have under the law), she is bound by the ruling in the previous lawsuit, and her current petition must fail, and must be dismissed." *Id*. at *4.

The trial court granted the respective motions to dismiss by order of October 28, 2014. In the order, the court states only that "the complaint is dismissed for failure to state a cause of action upon which relief can be granted." Ms. Armes appealed. *Id*. at *4. In *McCartt I*, this Court vacated the trial court's dismissal of Ms. Armes' complaint; specifically, we held that:

> In this case, the record contains no indication of when Armes became aware of the will contest or the settlement agreement. Thus, in the current posture of the case, it is impossible to say whether Armes had the opportunity to make any conscious decision whether to "join the contestant, join the proponent, or stand aloof." More importantly, *Petty* observes that a settlement of a will contest must be done "in good faith," and we believe that the allegations of the complaint raise a legitimate issue of whether the settling heirs acted in good faith.

- 4 -

Armes' complaint includes a claim that her siblings defrauded both her and the trial court by representing that J.D. McCartt had only three surviving children and heirs, and not four as Armes has alleged. Construing the complaint liberally, presuming all of Armes' factual allegations to be true and giving her the benefit of all reasonable inferences, her complaint alleges, in effect, that the settling heirs deliberately concealed Armes' existence and status as J.D. McCartt's heir, in order to purposely cut her out of the settlement agreement, despite being fully aware that she was J.D. McCartt's daughter and heir as established by a prior court order.

*McCartt I*, at \*7 (citing *Petty v. Call*, 599 S.W.2d 791, 796 (Tenn. 1980)).

On remand, the trial court held a hearing on May 17, 2016. By order of November 17, 2016, the trial court dismissed Ms. Armes' complaint. The trial court's order provides, in relevant part, that:

[T]he Court found that there was no evidence of any fraud or duress, undue influence or misrepresentation or anything else done toward [Appellant], and that each of the parties to the will contest were simply protecting their interest without any intent to misrepresent or defraud [Appellant] who could have otherwise participated in the will contest had she chosen to do so.
The Court further finds that there is sufficient evidence that [Appellant] knew of the probate proceedings and the contents of the Will and that it is probable that [Appellant] knew of the existence of the lawsuit and could have participated in said lawsuit had she chosen to do so but elected not to do so.

Ms. Armes appeals.

## II. Issues

As an initial procedural matter, we note that Appellant's brief fails to set forth a statement of the issues presented as required under Tennessee Rule of Appellate Procedure 27(4) ("The brief of the appellant **shall** contain under appropriate headings and in the order here indicated . . . [a] statement of the issues presented for review."). A party's failure to comply with the Rules of Appellate Procedure and the rules of this Court constitutes waiver. *See, e.g., Duchow v. Whalen*, 872 S.W.2d 692 (Tenn. Ct. App. 1993). Although the Tennessee Supreme Court has held that it will not find this Court in error for not considering a case on its merits where a party did not comply with the rules of this Court, *Crowe v. Birmingham & N.W. Ry. Co.*, 156 Tenn. 349, 1 S.W.2d 781 (1928), for good cause, we may suspend the requirements or provisions of these rules in a given case. *Bean v. Bean*, 40 S.W.3d 52, 54 (Tenn. Ct. App. June 19, 2000), *perm. app.*

*denied* (Tenn. Feb. 26, 2001). In the interest of adjudicating this appeal on the merits, we have reviewed the argument section of Appellant's brief, and we glean, from her arguments, that there are three dispositive issues, which we state as follows:

1. Whether the evidence preponderates against the trial court's finding that Appellant had sufficient notice of the will contest such that she could have participated in the lawsuit.
2. Whether the trial court deviated from this Court's mandate, in ***McCartt I***, by not addressing the issue of whether Appellees acted in good faith.
3. Whether the evidence preponderates against the trial court's finding that Appellees had not engaged in fraud or misrepresentation.

### III. Standard of Review

Because this case was tried by the court sitting without a jury, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates against those findings. ***McGarity v. Jerrolds***, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013); ***Wood v. Starko***, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, the weight of the evidence must "demonstrate... that a finding of fact other than the one found by the trial court is more probably true." ***Williams v. City of Burns***, 465 S.W.3d 96, 108 (Tenn. 2015); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court conducts a de novo review of the trial court's resolutions of question of law, with no presumption of correctness. ***Kelly v. Kelly***, 445 S.W.3d 685, 691-92 (Tenn. 2014); ***Armbrister v. Armbrister***, 414 S.W.3d 685, 692 (Tenn. 2013).

### IV. Analysis

### A. Whether Appellant had Notice of the Will Contest Proceedings

It is undisputed that the trial court entered its order on the settlement agreement on November 20, 2012. Ms. Armes did not file her lawsuit until almost a year later, on November 4, 2013. In her appellate brief, Ms. Armes argues that, from her testimony, "it is difficult to comprehend how the Chancellor determined that Ms. Armes 'probably knew of the existence of the lawsuit . . . .'" Concerning when she learned of the will contest and, specifically, the settlement agreement, Ms. Armes testified, in pertinent part, that she was aware that Decedent had died, and she was also aware that she was not named as a beneficiary under Decedent's will. Ms. Armes also acknowledged that she was aware that she was, in fact, Decedent's heir-at-law pursuant to the adjudication of paternity in the Estate of J.D. McCartt, Sr.. Nonetheless, Ms. Armes testified that she was not aware of the will contest until after the settlement agreement was entered:

Q. And you are now aware that the parties to the Will contest participated in mediation September 24, 2012?
A. Aware of it now, not at the time.
Q. Did anyone call to invite you that there was going to be a meeting—that there was going to be a mediation to discuss the Will contest?
A. No.
Q. How did you learn of it?
A. I called to find out if there was anything had come up—had been taken care of at the courthouse, and they told me that everything had all been settled and cleared. And I said, "Wait." Okay. So I came to the courthouse and I got the paperwork that would be beneficial to me and found out that they had came [sic] . . . to an agreement and settled together. Basically . . . I feel like they went behind my back and came to an agreement, purposely excluding me . . .

Ms. Armes' direct testimony, however, differs from her testimony on cross-examination. On cross, Ms. Armes explained:

Q. Did you ever sit down to actually read the Will that had been published and placed through the Probate Court . . .
A. I tried to read—and didn't understand it.
Q. And, so—and when you did that, could you understand it?
A. Well, parts of it.
Q. Okay. So parts of it. You knew that by that Will, that—that there were certain heirs. . .did you not understand that?

***

A. Yes.
Q. All right. Now—so, the fact that you came to the courthouse to see what had happened as a result of the mediation, why did you do that?
A. Just to see if anything had been settled or . . . if I needed to move forward . . . And I came to learn that they had came [sic] to an agreement.
Q. All right. Well, why didn't you get your lawyer before that? If you knew where to go and you knew they were doing all of this, and you knew that the proceeding was here, why did you wait until after the mediation agreement, and then not only after that, a year after?
A. I wasn't listed in the Will. And, then, time just went by, and then I came to—

***

Q. So . . . you're aware that they went and got a lawyer to contest the Will and chose to be represented, and there was a dispute going on with regard to whether or not the Will was to be set aside. You were aware of that, there was a Will contest, correct?

A. I didn't file the contest, though.

Q. Yes. And, so, what happened is that knowing that, you elected not to participate. You were just going to wait the outcome and see what happened; is that what I understand? And, then, you came up here and checked to see what had happened to your interest?

A. Yeah. I mean—

Q. All right. Now, then after that happened, can you tell me why it was that you waited over a year after Chancellor Williams had entered this order to file anything either in this court or this separate proceeding that you've alleged that they tried to defraud you?

A. Because I wasn't aware that they had gotten together and agree[d] . . . to the mediat[ion].

Q. [But if you had] read the court documents, you would know that, would you not? They were public knowledge, you would know that, if you had gone in and read, just as you told me you had read the Will. You read the will, didn't you?

A. I looked over it . . .

The foregoing testimony conflicts with Ms. Armes' assertion, in her appellate brief, that "she was not aware of the will contest or a settlement of the will contest until after the trial court had entered an Order adopting the settlement agreement." From the record, Ms. Armes was aware of Decedent's death, and she was aware that Decedent's will had been admitted to probate. Furthermore, at the time of Decedent's death, Ms. Armes had been adjudicated to be J.D. McCartt, Sr.'s biological child, and she was aware that she had not been included as a beneficiary under Decedent's will. Moreover, at the time of the will contest, Ms. Armes was still represented by Attorney Robert W. Wilkinson, who had filed her paternity action in the matter of J.D. McCartt, Sr.'s probate. Nonetheless, Ms. Armes testified that she chose not to participate in the will contest:

Q. Now all during this time, Mr. Wilkinson had been your lawyer?

A. Uh-huh.

***

Q. He's been your lawyer since 2004?

A. Uh-huh.

***

- 8 -

Q. And if anybody knew that you were an heir, he certainly knew you were an heir, didn't he?
A. uh-huh, yes.
Q. And did you ever talk to Mr. Wilkinson when the Will contest came up to say, "I want you to represent . . . my interest in a Will Contest"?
A. Yes, I talked to him.
Q. Why didn't he proceed further?
A. I don't remember. . . .

To corroborate the fact that Ms. Armes' attorney, Mr. Wilkinson, knew about the will contest proceedings, Appellees' elicited the testimony of Attorney Joseph VanHook, who represented the heirs, G.M. McCartt and Betty Jane McCartt Newman, in the will contest. Mr. VanHook testified that he called Mr. Wilkinson early in the will contest litigation to see if Mr. Wilkinson would be interested in substituting as counsel to represent the personal representative of Decedent's estate because the original counsel was withdrawing due to a conflict. To this end, Mr. VanHook discussed, with Mr. Wilkinson, the will contest:

Q. So did you call Wilkinson?
A. Yes, I called Mr. Wilkinson and outlined the problem and asked if he could serve as personal representative . . . and Mr. Wilkinson indicated that he probably would end up with a conflict of interest because he had represented Ms. Armes in a legitimation case involving the family, and I believe he had talked to [Ms. Armes]. . . and that it would be some likelihood that if he got involved with the case, he'd have a conflict.

***

Q. Did he tell you that he was going to represent [Ms. Armes] . . . .
A. He did not say that he would represent her. He basically said that she was going to wait and see how [the will contest] developed or see what happened.

***

Q. But he did tell you he was going to wait and see what happened?
A. Yes.
Q. Now at that time, the Will Contest had been filed?
A. Yes, it had been pending for . . . at least three months.

Although Appellant states that it is "obvious logic" that she would have participated, if she had known the parties were mediating an agreement to include J.D. McCartt, Sr.'s heirs, the foregoing testimony belies this assertion. From the totality of the

circumstances, it appears that Ms. Armes had actual knowledge of the probated will and the fact that it did not provide for J.D. McCartt, Sr.'s heirs. As an adjudicated heir of J.D. McCartt, Sr., Ms. Armes could have contested Decedent's will in an independent action.

Furthermore, Mr. VanHook's uncontested testimony reveals that Ms. Armes' attorney had knowledge of the will contest proceedings while these proceedings were still pending. We glean from Mr. VanHook's testimony that, although Mr. Wilkinson was in contact with Ms. Armes, she chose to "wait and see" what happened in the will contest rather than joining the lawsuit. It is a well settled Maxim of Equity that "[e]quity aids the vigilant, not those who sleep upon their rights." William H. Inman, Gibson's Suits in Chancery § 25 (7th ed. 1988). From our review of the record, the evidence does not preponderate against the trial court's conclusion that Ms. Armes was sufficiently aware of the will contest proceedings, either through her own inquiry at the courthouse or through her attorney, such that she could have participated in the lawsuit (or filed her own lawsuit) had she chosen to do so.

### B. Whether the Appellees Acted in Good Faith

In *McCartt I*, this Court cited the case of *Petty v. Call*, 599 S.W.2d 791 (Tenn. 1980), in which the Tennessee Supreme Court stated:

> A will contest may be brought by any one interested party, and all other interested parties are free to join the contestant, join the proponent, or stand aloof. Those who are cast in the litigation may settle, *if they do so in good faith*, but any compromise of the contest will not inure to the benefit of the non-participating heirs, but on the other hand, if trial of the issue results in an adjudication that the will is invalid, the non-participating heirs take their respective shares of the intestate decedent's estate.

*Petty*, 599 S.W.2d at 796 (emphasis added). On appeal, Ms. Armes argues that the trial court did not make a specific finding that the Appellees acted in good faith in participating in mediation and settlement of the will contest. Accordingly, Ms. Armes contends that the trial court deviated from this Court's mandate in *McCartt I*. We disagree. Although we concede that the trial court did not specifically find that the parties to the mediation acted in good faith, the trial court's determination that the participants had not subverted the will contest proceedings from Appellant, gives rise to a reasonable inference of good faith. Our independent review of the evidence supports this inference.

Ms. Armes argues that she "didn't participate [in the settlement agreement] because she was not invited." The fact, however, remains that Ms. Armes had sufficient knowledge of the proceedings (*see* discussion *supra*), but chose not to participate in the will contest. As such, she was never a party to that lawsuit and was, therefore, not

entitled to notice of the substantive proceedings in the case, including the trial court's order requiring the will contest participants to mediate. Nonetheless, Ms. Armes contends that the language, stating that "if any claims are filed by individuals asserting an interest as an illegitimate child of J.D. McCartt, then the heirs of J.D. McCartt agree to indemnify and hold harmless all other heirs of Vida Mae McCartt from any claims which may be pursued by purported heirs at law of J.D. McCartt," was intentionally included in the settlement agreement in an attempt to preclude Ms. Armes from her rightful share of Decedent's estate. We disagree. In the first instance, the disputed language does not preclude Ms. Armes from participation in the will contest, nor does it preclude her from filing her own lawsuit. The language merely states that Appellees will indemnify Decedent's other heirs from any claims made by any of J.D. McCartt, Sr.'s unknown heirs. Ms. Armes also argues that the heirs of J.D.McCartt, Sr. are specifically set out in the settlement agreement to include only the Appellees despite the fact that the contestants knew that Ms. Armes had been adjudicated as J.D.McCartt, Sr.'s biological child. Again, Ms. Armes was not a party to the will contest; accordingly, only those heirs of J.D.McCartt, who chose to participate in the will contest, were specifically listed in the settlement agreement, to which they were parties. In her testimony, Susan Collins explained:

> Q. And, so, in this agreement when the heirs of J.D.McCartt were identified as Joe McCartt, Susan Collins, and Nancy Wilson, why does it not include Sara Shannon Armes?
> A. Because she did not participate in the original Will Contest. We paid a lawyer to represent us. She could have done the same.

In view of our conclusion that Ms. Armes had opportunity to participate in the will contest, but chose not to do so, we cannot infer, from the fact that her name was specifically omitted from the enumerated list of J.D. McCartt Sr.'s heirs, that Appellees were intentionally excluding Ms. Armes from Decedent's estate. Under *Petty*, Ms. Armes's decision to "wait and see" could have worked to her advantage had the will been invalidated; in that scenario, she would have taken as an heir at law. However, because the contestants were able to reach an agreement, the benefit of that agreement did not inure to Ms. Armes' benefit because she was a "non-participating heir[]," having chosen not to participate in the contest of Decedent's will. *Petty*, 599 S.W.2d at 796.

From the totality of the circumstances, it appears that the parties to the will contest acted in good faith in reaching their settlement. There is no evidence to suggest that the contestants' inclusion of a list of participating heirs, or their inclusion of the indemnification language was done for any purpose other than to protect their interests in Decedent's estate.

- 11 -

## C. Fraud or Misrepresentation

The trial court determined that Appellees had not perpetrated any fraud or misrepresentation on Ms. Armes. In the first instance, the contestants did not unilaterally decide to mediate their lawsuit behind Ms. Armes' back. Rather, the trial court entered an order, on September 21, 2012, requiring mediation between the parties to the will contest. Again, Ms. Armes' was not a party to the will contest. As such, the contestants were not required to include Ms. Armes in the mediation, which was exclusively by and between the will contestants. Each of the Appellees testified that they had done nothing to intentionally deceive or defraud Ms. Armes. Their testimony is corroborated by Attorney VanHook, who testified, in relevant part, that "[a]s opposing counsel, I did not see anything that [Appellees] said or did that would amount to some type of misrepresentation or other types of direct or indirect fraud, active or passive misrepresentation as far as Ms. Armes might be concerned." Mr. VanHook explained that the Appellees were not all of the heirs of J.D. McCartt, Sr., but were the ones that had chosen to participate in the will contest. He further stated that had Ms. Armes chosen to participate in the will contest, she would have received the same notices that the contestants' received. Nonetheless, Ms. Armes maintains that she was entitled to notice of the mediation and that Appellees intentionally excluded her by not providing her with this notice. In Tennessee, a will contest is a proceeding in rem and the res is the decedent's estate. All persons who have a claim in the event of testacy or intestacy have a right to become parties. If they fail to do so, they are bound by the result. "In Tennessee, the right to intervene in a Will Contest is not accompanied by the right to notice of its filing." *Petty*, 599 S.W.3d at 793; *In re Estate of Sutton*, No. E2013-00245-COA-R3-CV, 2013 WL 6669385, *5 (Tenn. Ct. App. Dec. 17, 2013), *perm. app. denied* (Tenn. May 15, 2014) ("[B]ecause a will contest is an in rem proceeding, its adjudication is conclusive upon all heirs and . . . therefore the probate court is not required to join all heirs in a will contest proceeding.").

The burden to show fraud is on Ms. Armes. Specifically, Ms. Armes must show that Appellees made representations of material facts that were false, that Appellees knew the representations were false, and that she was damaged by the misrepresentations. *See Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.2d 301 (Tenn. 2008); *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228 (Tenn. Ct. App. 1976). From our review of the record, Ms. Armes has failed to meet her burden of proof concerning her allegations of fraud. The logical explanation for the lack of notice of the will contest and settlement negotiations is simply that Ms. Armes was not a party to the lawsuit. As such, she was not entitled to notice. Therefore, the lack of notice, without more, cannot form the basis for a finding of fraud on the part of Appellees. From the totality of the circumstance, the evidence does not preponderate against the trial court's finding that "each of the parties to the Will Contest were simply protecting their own interest, without any intent to misrepresent or defraud Sara Armes, who could have participated in the Will Contest, if she had chosen to do so. . . ."

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Sara Shannon Armes and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE